JOSEPHINE BLACKMAN, PLAINTIFF-APPELLANT, v. ALFRED JOHN ILES, CHARLES CUNLIFFE, JOSEPH E. JADOUN, AND THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued January 23, 1950—Decided February 20, 1950.

84

*Mr. Harry R. Coulomb* argued the cause for appellant (*Messrs. Coulomb, McAllister & Hunter*, attorneys).

*Mr. Harry Miller* argued the cause for respondents Alfred John Iles, Charles Cunliffe and Joseph E. Jadoun (*Mr. Albert N. Shahadi*, attorney for respondents Alfred John Iles and Joseph E. Jadoun. *Mr. Bertram M. Saxe*, attorney for respondent Charles Cunliffe).

The opinion of the court was delivered by

WACHENFELD, J. Josephine Blackman filed her complaint in a civil action in the court below alleging the defendants Iles, Cunliffe and Jadoun carnally knew and debauched her daughter, a child fourteen years of age, at diverse times and places and she was advised that by reason thereof she had separate causes of action against them for damages "for loss

of services, shame, humiliation and nervous shock occasioned by and as a result of the said defendants and each of them, having carnally known and debauched Lois J. Schaufler, the daughter and servant of said plaintiff * * *."

She further asserts doubt has arisen by reason of a statute of the State of New Jersey, i. e., R. S. 2:39A-1 to 2:39A-9, as to whether this enactment prohibits her from bringing such action in the courts of this State and that she cannot safely institute these causes without rendering herself liable to criminal prosecution under the terms thereof in the event the statute is ultimately construed to prohibit the institution of said claims. She therefore petitions the court to interpret the statute and to construe it as not forbidding her to file her complaint and issue process to recover damages for the loss of services of her daughter and servant.

The Attorney General of the State of New Jersey, although made a party to the action and served with process, filed no answer. The other defendants by their answers deny they are guilty of the charges alleged against them, challenge the right of the plaintiff to invoke the aid of the Declaratory Judgments Act and assert the "Heart Balm Act" is applicable and constitutional, having been so declared by the courts of this State. The plaintiff's motion for judgment on the pleadings was denied and the trial court dismissed the complaint, holding the action was barred by the provisions of the "Heart Balm Act." The appeal to the Appellate Division of the Superior Court was certified here on our own motion.

The inquiry is, first, whether the complaint is sufficient to sustain a declaratory judgment under R. S. 2:26-66 et seq. and, secondly, whether the so-called "Heart Balm Act," R. S. 2:39A-1 to 9, forbids the plaintiff from having and maintaining the action against the several defendants for the loss of services of her infant daughter as a result of the debauchment by said defendants. The constitutionality of the act is also questioned but this issue will not be encountered unless the second inquiry is resolved against the plaintiff.

The defendants' answers challenged the complaint as insufficient to sustain a declaratory judgment. The issue thus

raised must be decided here for the first time since the complaint was dismissed below on other grounds and the question of its sufficiency establishing a justiciable demand for judgment under the Declaratory Judgments Act was not passed upon.

The complaint is not predicated upon a moot or academic proposition but specifically sets forth the cause of action existing against the defendants for the loss of services of the plaintiff's minor daughter and alleges the hazards she may encounter by instituting such an action, which might subject her and her attorneys to indictment and the severe penalties provided in *R. S.* 2 :39A–7:

"Any person who shall violate any of the provisions of this chapter shall be guilty of a misdemeanor which shall be punishable by a fine of not less than one thousand dollars nor more than five thousand dollars or by imprisonment for a term of not less than one year nor more than five years or by both such fine and imprisonment in the discretion of the court."

Each of the defendants by his answer denies guilt and the issue so framed admittedly presents a jury question which cannot be and is not intended to be adjudicated in this action; it can only be determined if and when the plaintiff institutes her contemplated action against the defendants to recover damages.

*R. S.* 2 :26–69 provides as follows:

"A person interested * * * or whose rights, status or other legal relations are affected by a statute * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder."

This act is to be liberally construed and administered to carry out its purposes and intent. *New Jersey Bankers Ass'n v. Van Riper,* 1 *N. J.* 193 (*Sup. Ct.* 1948).

The complaint specifically sets forth and clearly states the offenses charged against the defendants on which the plaintiff's cause of action is based and alleges the possibility that the action may be prohibited by *R. S.* 2 :39A–1 to 9. If the

the statute is applicable, the plaintiff would be placed in great jeopardy and subject to indictment and other legal embarrassments.

Under these circumstances, the plaintiff has a clear and unmistakable right to invoke the provisions of the Declaratory Judgments Act in order that her "rights, status or other legal relations" as affected by the statute may be determined. She is not obliged to assume the risk of prosecution, fine and imprisonment in endeavoring to secure an adjudication of her rights.

The "Heart Balm Act" originated in 1935 and was designated as Chapter 279, entitled "An act declaring and carrying into effect the public policy of the State of New Jersey with respect to causes of action for alienation of affections, criminal conversation, seduction and breach of contract to marry, actions thereon, contracts with respect thereto and acts and proceedings in connection therewith." The first section of the act as presently of record reads:

"R. S. 2:39A–1.
"The rights of action formerly existing to recover sums of money as damage for the alienation of affections, criminal conversation, seduction or breach of contract to marry are abolished from and after June twenty-seventh, one thousand nine hundred and thirty-five."

This section centers its prohibition on and forbids actions to recover sums of money for alienation of affections, criminal conversation, seduction or breach of contract to marry and, in determining its scope and effect, consideration must be given to the causes of action then existing. Under our law, a person seduced, except on promise of marriage, never had an action to recover money damages and no action could be maintained for the debauching of a daughter or servant unless there was proof of services previously rendered and thereby lost. The law permitted no recovery unless these elements were established by the aggrieved parent. *Coon v. Moffitt*, 3 *N. J. L.* 169 [*583] (*Sup. Ct.* 1809).

It is a recognized rule of statutory construction that the intention of the Legislature is to be derived from the

entire document. The meaning of the general words will be restricted whenever this is necessary to carry out the legislative intention and the reason and spirit of the statute will control in its interpretation. *Lynch v. City of Long Branch,* 111 *N. J. L.* 148 *(Sup. Ct.* 1933); *May v. Board of Com'rs. of Town of Nutley,* 111 *N. J. L.* 166 *(Sup. Ct.* 1933).

The inquiry in construing statutes is to determine the purpose and intent of the Legislature. If the statute alters or amends the previous law or creates or abolishes types of actions, it is important, in discovering the intention of the Legislature, to ascertain the old law, the mischief and the proposed remedy. *Holt v. Akarman,* 84 *N. J. L.* 371 *(E. & A.* 1913); *Pine v. Okzewski,* 112 *N. J. L.* 429 *(E. & A.* 1934). A statute may take away a common law right but there is always a presumption that the Legislature had no such intention. *Sutherland, Statutory Construction* (3d *Ed.* 1943), *Vol.* 3, § 6201. If a change in the common law is to be effectuated, the legislative intent to do so must be clearly and plainly expressed. *Carlo v. Okonite-Callender Cable Co.,* 3 *N. J.* 253 *(Sup. Ct.* 1949).

The statutory language abolishing the several actions, construed in the light of these principles, relates to the institution of marriage. The suits against these defendants are common law actions for the invasion of a property right, *i. e.,* the right of services of a servant, and may be instituted by the master or, under our present practice, by either parent. *R. S.* 9:1–1. The gravamen and the gist of the action are not the debauchery itself but the loss of services of the child or servant. *Vanhorn v. Freeman,* 6 *N. J. L.* 322 *(Sup. Ct.* 1796); *Ogborn v. Francis,* 44 *N. J. L.* 441 *(Sup. Ct.* 1882); *Tittlebaum v. Boehmcke,* 81 *N. J. L.* 697 *(E. & A.* 1911).

In *Bunten v. Bunten,* 15 *N. J. Misc.* 532 *(Sup. Ct.* 1937), the court, adopting the language employed in *Hanfgarn v. Mark,* 274 *N. Y.* 22, 8 *N. E.* 2d 47 (1937), said:

"The legislature, in dealing with the subject of marriage, has plenary power, as marriage differs from ordinary common law contracts, and is subject to control and regulation by the state. * * * An action to recover damages for breach of promise to marry is

based upon an agreement preliminary to marriage and an action to recover damages for alienation of affections and criminal conversation is founded upon the marriage relation itself. Each has to do with the marriage status and each is subject to regulation and control by the state."

Since the causes of action enumerated in the statute are thus determined to relate to and have "to do with the marriage status," so too the statutory language abolishing those actions should be likewise circumscribed.

In the case *sub judice* the demand for damages is not based upon the marriage status but upon the loss of services by reason of a criminal attack upon a fourteen-year-old female child, concerning which the court in *Coon v. Moffitt, supra,* said:

"* * * that actions of this kind have been highly favored in courts of justice; that they have been made merely the form of getting at the violators of female chastity and honor; that the loss of service laid in the declaration, is by no means the measure of damages, but that being once proved, all other circumstances which can aggravate the transaction, are subjected to the consideration of the jury, in order that compensation may be made, as far as money can be a compensation, for the lost reputation of the daughter, for the wounded feelings of the parents, for the tarnished honor of the family."

There is nothing in the statutory enactment indicating an intent to lessen the consequences of or give comfort to those who violate our criminal statutes enacted to protect from sex invasion immature children who have not reached the age of discretion. If the allegations in the cause of action here filed are true, these defendants were guilty of the crime of carnal abuse under our existing law even if the child acquiesced in the acts.

If doubt still exists as to the statutory interpretation, resort may be had, as in *Bunten v. Bunten, supra,* to the preamble:

"In determining the intent of the legislature we are aided by the preamble to the act, which reads as follows:
" 'Whereas, the remedies herein provided for by law for the enforcement of actions based upon alleged alienation of affections, criminal conversation, seduction and breach of contract to marry have been

subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances, and such remedies having been exercised by unscrupulous persons for their unjust enrichment and such remedies having furnished vehicles for the commission or attempted commission of crimes and in many cases having resulted in the perpetration of frauds, it is hereby declared as the public policy of the State of New Jersey that the best interests of the people of the state will be served by the abolition of such remedies. Consequently, in the public interest, the necessity for the enactment of this article is hereby declared as a matter of legislative determination; therefore, Be it enacted  *  *  *.' "

Although it has been generally held that the preamble is "no part of the act" and will not control the enacting part of the statute in cases where the statute is expressed in clear, unambiguous terms, nevertheless our courts have said on innumerable occasions that the preamble may be considered to assist in determining the intention of the law makers where any doubt arises concerning the construction to be placed upon the enacting part. *Sutherland, Statutory Construction* (*3d Ed.* 1943), *Vol.* 2, § 4804.

In *Quackenbush v. State,* 57 *N. J. L.* 18 (*Sup. Ct.* 1894), the court said:

"It is well settled that where the intention of the legislature is clearly expressed in the purview or body of the act the preamble shall not restrain it, although it be of much narrower import. * * *

"The preamble cannot restrict the enacting clauses except where their language is ambiguous or uncertain."

The preamble clearly indicates that the causes of action abolished are all inter-related with and dependent upon the subject of marriage. In fact, the constitutionality of the act in *Bunten v. Bunten, supra,* was based upon the theory that the Legislature was dealing with the "subject of marriage." In the case presently under consideration, the action was to recover for the loss of services of a minor daughter resulting from a criminal attack and was entirely foreign to the relationship of marriage or contemplated marriage.

Two other circumstances are indicative of the legislative intent. *R. S.* 2:27–70 makes provision for a *capias ad respondendum* being issued for seduction, outrageous battery

or mayhem and this clause was carried into the revision of 1937 after the passage of the "Heart Balm Act." If the Legislature had intended to abolish the action for seduction for loss of services by a master or parent, we doubt it would have made, as it did, provision for the issuing of a *capias* in an action founded upon seduction.

Chapter 201, Laws of 1926, likewise carried·over and re-enacted in the revision of 1937 after the passage of the "Heart Balm Act," provides in part, *R. S.* 9:1-1:

> "The parents jointly may maintain an action for the loss of the wages or services of their minor child when such loss is occasioned by an injury wrongfully or negligently inflicted upon such child. * * *"

No exception is made for damages arising from acts such as those here alleged. If the resulting injury is "wrongfully inflicted"—and there can be little doubt about that in the instant case—the very wording of the statute specifically provides the parents "may maintain an action for the loss of the wages or services of their minor child."

In viewing the act as a whole and the causes of action therein abolished, we think it clear they all pertain to the "status of marriage" and the rights, privileges, duties and obligations related to and flowing therefrom. Mindful of the old law, the mischief existing, the remedy proposed, the standard of consideration determined by *Holt v. Akarman, supra,* we conclude it was not the legislative intent to prohibit the institution of the plaintiff's cause of action as herein exhibited to recover damages for loss of services arising from the debauching of her minor child.

The judgment of the court below is reversed and judgment will be entered here in accordance with this opinion. *Rule* 1:4-9(b).

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.