M. EDWARD DeFAZIO, PLAINTIFF-APPELLANT, v. HAVEN
SAVINGS AND LOAN ASSOCIATION, A CORPORATION
OF THE STATE OF NEW JERSEY, AND HENRY WESS-
LING, DEFENDANTS-RESPONDENTS.

Argued October 22, 1956—Decided November 13, 1956.

512

*Mr. Samuel J. Davidson* argued the cause for appellant (*Messrs. DeFazio, Davidson & DeFazio,* attorneys).

*Mr. Emil W. A. Schumann* argued the cause for respondents.

The opinion of the court was delivered by

WACHENFELD, J. The inquiry here is whether or not the court below had jurisdiction and whether a cause of action requiring a trial on its merits was presented.

The amended complaint, a proceeding in lieu of prerogative writ sounding in *mandamus,* filed by the plaintiff as a member of the respondent savings and loan association, recited the following facts:

The respondent operates a savings and loan association; the members are those in whose names accounts are established either as saving or as borrowing members; the plaintiff is such a member and has a participating interest with two other persons in account No. 12303 amounting to $3,124.47 and therefore claims voting rights inherent in said membership.

By-law No. 27 of the defendant corporation provides each member shall be entitled to one vote at any meeting of the association regardless of the number of accounts standing in his name, but only one vote shall be allowed on an account

held by two or more persons jointly. The voting may be in person or by proxy.

The plaintiff, it is said, is a member of the respondent loan association and under its by-laws was entitled to vote at the annual meeting originally scheduled for January 17, 1956, at which meeting directors of the association were to be elected.

On December 19, 1955 the plaintiff filed with the respondent loan association an application requesting, amongst other things, the names and addresses of the members of the association so he could solicit their proxies or receive word from the association that it would forward and mail at the expense of the plaintiff requests to his co-members for their proxies to be voted at said annual meeting. The purpose for which such names and addresses were sought was to protect the proxies already obtained by him and to be obtained by him in an effort to elect independent directors at the annual meeting.

The loan association on December 28, 1955 advised that this request would not be complied with. Such information list was wanted by the plaintiff for the purpose of sending to the other members a communication in advance of the date fixed for the adjourned annual meeting. The communication was to let the other members have such information which the plaintiff believed would be in their interest and at the same time to request proxies to be voted at the meeting.

In an endeavor to obtain this list or, in the alternative, to have the respondent mail the proxy solicitations to co-members, the plaintiff appealed from the defendant's refusal to comply to the Commissioner of Banking and Insurance of the State of New Jersey pursuant to *R. S.* 17:12A–100, as amended, but the Commissioner in his determination held:

"However, no such right of inspection has been written specifically into the Savings and Loan Act of New Jersey, and hence, it would appear that generally on this subject the common law doctrine prevails. Otherwise it seems reasonable to assume that the Legislature would have spoken more definitely on the subject.

It is therefore our considered judgment that the application of M. Edward DeFazio for the relief requested under section 100 of the Savings and Loan Act be dismissed because of our belief that the word 'information' cannot be construed to encompass within its scope the right of the Commissioner to order an association to furnish to a member a list of names and addresses of the other members of the association; nor does it, in our opinion, confer upon the Commissioner the right to order the circularization of such members. And it is hereby ordered that the application be denied."

The complaint sought relief under the common law and protection of the *res* by preventing the holding of a meeting until the issue was determined.

The respondent moved for judgment in its favor and the court, finding as a matter of law that it had no jurisdiction to hear and determine the matter, entered a judgment for the respondent. The court held:

"* * * This court has no jurisdiction over the subject matter of this proceeding either original or *de novo* or by way of review or appeal but that original jurisdiction is exclusive in the Commissioner of Banking and Insurance of the State of New Jersey under *N. J. S.* 17:12A–100, as amended by the laws of 1953, chapter 17, page 202, section 67 and that jurisdiction to review the Determination of the Commissioner under said statute is exclusive in the Appellate Division of the Superior Court under New Jersey Rules of Civil Practice 4:88–8."

The plaintiff emphasizes and makes it perfectly clear throughout his brief that he has "no quarrel with the determination" (referring to the Commissioner's finding) and sought his relief in the Law Division of this court under his common law rights. In fact, he criticizes the court below because it failed to realize he was not appealing from the conclusions of the Commissioner.

Referring to the banking laws of this State providing for the making of a list of stockholders which shall be available for examination by any stockholder, the plaintiff notes such a provision has not specifically been written into the Savings and Loan Act of New Jersey and insists that by this omission the common law doctrines must prevail.

The plaintiff, as we have said, argues extensively that his "in lieu" action was misconstrued and he is seeking dis-

closure by virtue of his common law rights and the court therefore should have considered the merits of his cause.

This approach is a complete change of pace from his former position, as it was the plaintiff who originally applied to the Commissioner under the statute for the information in question. The about-face procedure undoubtedly is attributable to the fact that he was also, which he does not set forth in his complaint, denied the relief sought upon its merits, the Commissioner having decided it was not for the best interests of the association and its members.

The Commissioner held:

"It is partially conceded that the association is well managed. We are unable to reach the conclusion that the substitution of a slate of directors composed of two lawyers and a secretary from the applicant's firm of lawyers and a relative of a member of that law firm, in the place of four directors against whom no adverse criticisms are directed, would be for the best interests of 'the association and its other members.' *McMahon v. Dispatch Printing Co.*, 101 *N. J. L.* 470, does, in our opinion, in great measure bear out our factual reasoning and conclusion on this phase of the matter. Hence, if the power to order existed, no order of circularization of the membership of the Haven Savings and Loan Association would be made on facts and circumstances before us on this application."

The plaintiff's effort, therefore, is to switch jurisdictions and thus compel the trial court to decide the same question *de novo* upon its merits already determined adversely to him by the Commissioner of Banking and Insurance. The simple inquiry is whether or not he can succeed in so doing under the common law or whether our present statutory procedure covers the field completely to the exclusion of the common law.

█ A savings and loan association is not a private business but *quasi*-public. *In re Eleventh Ward Building & Loan Ass'n of Newark*, 130 *N. J. Eq.* 414 (*E. & A.* 1941), *certiorari* denied *Schaaf v. Eleventh Ward Building & Loan Ass'n of Newark*, *N. J.*, 315 *U. S.* 799, 62 *S. Ct.* 580, 86 *L. Ed.* 1200 (1942); *Rocker v. Cardinal Building & Loan Ass'n*, 13 *N. J. Misc.* 397 (*Sup. Ct.* 1935), affirmed 119 *N. J. L.* 134 (*E. & A.* 1937).

■ These associations are creatures of statute and are *quasi*-public in nature. Their creation, by-laws, officers, manner of doing business, investments, expenses, reserves and accounting are all more or less subject to statutory, governmental control and supervision. Because of the inherent nature of the corporation, particularly as to its large membership, which seeks safe investment mediums, the Legislature has placed upon certain state officers the responsibility of protecting the members in dealing with the association, and while the court's power is not relinquished entirely, it is much more restricted than in cases dealing with private corporations. *In re Puget Sound Savings & Loan Ass'n*, 49 *F. 2d* 922 (*D. C. W. D. Wash.* 1931).

The act of 1946 was the result of years of study by the Committee on Revisions and Modernization of the Building and Loan Act of the New Jersey Savings and Loan League. It was given careful consideration and approval by the Commissioner of Banking and Insurance and his associates and it provided the State with a modern and efficient statute to govern its mutual and cooperative thrift and home-financing systems.

It was the first complete revision of laws governing such associations since 1903. Amendments and supplements and two partial revisions were enacted subsequent to 1903, but the "Savings and Loan Act" of 1946 was the first general and broad revision since the passage of the 1903 act. It was approved April 4, 1946 and became *chapter* 56 of the *Laws of* 1946, and with the amendments and supplements to September 1, 1954, the legislative policy embracing character and control and supervision by the State, through its Commissioner, over the member associations and member shareholders is illuminatingly disclosed.

The statement on the bill by its introducer reads:

"This bill accomplishes a complete revision and modernization of the building and loan laws of New Jersey.

The present Building and Loan Act was passed in 1903 and while amended and re-amended since that time, it is out of date. A modern statute is required in order to make the thrift and home-

financing facilities of these institutions of the widest public benefit and to provide further protection and safeguards to the saving and home-owning public."

*R. S. 17:12A-100* in part provides:

"Requests for information by members
*   *   * Any member desiring information from his association may file with the association, an application therefor in writing, which shall state:
(a) His full name and address.
(b) The amount of the participation value of his account in the association.
(c) The particular information which he seeks.
(d) The purpose for which he seeks it.
(2) Appeal to commissioner. If the association shall fail to supply the information applied for   *   *   *   such member may *   *   * apply to the commissioner for an order requiring the association to do so.
*         *         *         *         *         *         *         *
*   *   * The commissioner shall determine whether the information is or is not sought in good faith, and whether or not it will be for the best interests, not only of the applicant but of the association and its other members, that the application be granted.   *   *   * the commissioner may grant or deny said application   *   *   * in whole or in part and may impose such terms and conditions as he shall deem necessary or proper to protect the interests of the association and its other members.
*         *         *         *         *         *         *         *
*   *   * The procedure herein   *   *   * shall be exclusive; but the action of the commissioner shall be subject to review in the Superior Court, in a proceeding in lieu of prerogative writ."

The recognized rule of statutory construction is that the intent of the Legislature is to be derived from the entire document. The meaning of the general words will be restricted whenever this is necessary to carry out the legislative intention, and the reason and spirit of the statute will control in its interpretation. *Blackman v. Iles*, 4 *N. J.* 82, 89 (1950); *Lynch v. City of Long Branch*, 111 *N. J. L.* 148 (*Sup. Ct.* 1933); *May v. Board of Comm'rs of Town of Nutley*, 111 *N. J. L.* 166 (*Sup. Ct.* 1933).

In construing statutes the inquiry is to determine the purpose and intent of the Legislature. If the statute alters or amends the previous law or creates or abolishes types of

action, it is important to discover the intention of the Legislature to ascertain the old law, the mischief, and the proposed remedy. *Blackman v. Iles, supra; Holt v. Akarman,* 84 *N. J. L.* 371 (*E. & A.* 1913); *Pine v. Okzewski,* 112 *N. J. L.* 429 (*E. & A.* 1934).

A statute may take away a common law right; however there is a presumption that the Legislature had no such intention. 3 *Sutherland, Statutory Construction* (3d ed. 1943); § 6201.

■ If a change in the common law is to be effectuated, the legislative intent to do so must be clearly and plainly expressed. *Carlo v. Okonite-Callender Cable Co.,* 3 *N. J.* 253 (1949); *Blackman v. Iles, supra.*

■■ Keeping in mind these legal admonitions, we nevertheless think the history and substance of the act in question constitute a complete administrative remedy intended by the Legislature to provide for expert administrative service to members, associations and the public, and it is self-sufficient unto itself to a degree where it supplants and by inference repeals the common law relating to such associations. Its terms are clear, unambiguous and complete.

To say a legislative act creating an all-embracive system for the government of a *quasi*-public agency, placing it under the control, supervision and protection of a state official, giving him power and imposing upon him a duty as to every item of action performed in its transactions of business, even to terminating its existence, without the intent to supplant any conflicting common law doctrines, is unrealistic.

In pressing his point that this appeal is not from the determination of the Commissioner, the plaintiff in his brief says: "The situation, at this time, is as if there were no statute at all, and the plaintiff is endeavoring to pursue his common law rights."

Therein lies the difficulty. We cannot assume there is "no statute at all," as we are petitioned to do, when as a matter of fact there exists an all-embracing statute enacted by the Legislature, designed to control and regulate man-

agement and members in every aspect and phase of their existence through a state agency.

The statement on the bill when introduced recited that the act of 1903 controlling this *quasi*-public agency was "out of date." The Legislature inferentially must have rationalized that this also was true of the common law concept of building and loan associations and their operation. Taking into consideration all of these circumstances, we are compelled to determine the court below was correct in its conclusion that it had no jurisdiction over the subject matter under the circumstances here presented.

▇ Referring to *R. S.* 17:12A–100, as amended, the plaintiff contends no statutory standard is set forth as to the meaning of the word "information" or what it encompasses and that the Commissioner is therefore powerless to act under it.

The trial court held otherwise and concluded the word, as used, included the names and addresses of all members of the savings and loan association.

· We are in accord. Although there are many dictionarial definitions of the word "information," all of them are broad and exceedingly liberal. Synonymous with "information" is "knowledge." "Knowledge" is "perception, apprehension, cognizance, understanding, experience, information, learning, lore, erudition, scholarship, wisdom, science."

The draftsmen could not have employed a word with a broader meaning, and we think it is obvious that "information" was used to cover not merely a book or a record or any item of knowledge which might be conceived to be of interest to the person asking for it but was intended to be all-inclusive within the discretion of the Commissioner.

It connotes such information or knowledge as the petitioner might believe he needed for his protection or benefit. It is flexible, all-embracive and quite contrary to the interpretation made by the Commissioner.

Referring to the amendment of the act which provides the procedure shall be "exclusive" but the action of the Commissioner shall be subject to review in the Superior

Court in a proceeding in lieu of prerogative writ, the respondent says it indicates there should be a review of the Commissioner's determination in the Superior Court *de novo,* both of law and facts, but the statute, it asserts, must give way to *R. R.* 4:88-8 because the rule supersedes the statute.

The plaintiff is content with such an elucidation, saying *"R. R.* 4:88-8 cited by the court below has no application to the issues here involved." Again: "Such review could only be had by an appeal under *R. R.* 4:88-8 by the person aggrieved. Obviously, the plaintiff, in this case, is not aggrieved."

There is an apparent conflict between the statute and the rule, and its manner of interpretation would relate to whether or not it was procedural or substantive, but both participants, according to the record, are satisfied with having the rule control, eliminating an issue for our consideration in the case *sub judice.*

The judgment below is affirmed.

HEHER, J. (dissenting). I would direct a dismissal of the complaint in this cause, not for want of jurisdiction of the subject matter, as my associates find, but rather for the exhaustion of the administrative remedy afforded by the statute, *R. S.* 17:12A-100, as amended by *L.* 1953, *c.* 17. It is peculiarly a case for the application of the "prior resort" doctrine.

The act vests jurisdiction of the subject matter in the Commissioner; but I do not hold the view that the statute "is self-sufficient unto itself to a degree where it supplants and by inference repeals the common law relating to such associations." We are concerned here only with the particular power invoked; and I am aware of no conflict with the common law in the administrative jurisdiction to determine whether the information at issue "is or is not sought in good faith, and whether or not it will be for the best

interests, not only of the applicant but of the association and its members, that the application be granted. * * *," the terms of the statute itself.

This jurisdiction is made "exclusive; but the action of the Commissioner shall be subject to review in the Superior Court, in a proceeding in lieu of prerogative writ." Is it the judicial province to accept the provision of the act for "exclusive" administrative jurisdiction, but to reject the accompanying provision for judicial review by the ordained mode?

Granting that the Legislature may provide for a primary and "exclusive" administrative jurisdiction, it could not deny judicial review and, mindful of the limitation, it also provided for such judicial reexamination by the historic prerogative writ, a substantive jurisdiction made exclusive in the Superior Court by the 1947 *Constitution, Artivle* VI, *Section* V, *paragraph* 4, and there made a writ of right except in criminal cases. The "in lieu" jurisdiction thus conferred comprehends "review, hearing and relief * * *, on terms and in the manner provided by rules of the Supreme Court, as of right" in civil cases. The legislatively-granted "exclusive" administrative jurisdiction was expressly conditioned upon a "review" by the "in lieu" process thus vested in the Superior Court alone, a substantive judicial function under the Constitution itself immune to legislative impairment or judicial annulment. See *Swede v. City of Cliflon,* 22 *N. J.* 303 (1956).

Only the Legislature may confer jurisdiction, subject to constitutional limitations. See 1947 *Constitution, Article* VI, *Section* V, *paragraphs* 1, 2. It is to be observed that the "in lieu" jurisdiction is covered by paragraph 4 of this section dealing with "Appeals."

It is not necessary to determine whether the legislative design was to bar judicial review until after agency action. It suffices to say that the particular inquiry is at the outset one for the informed and experienced judgment of the Commissioner, and so it is a case for the enforcement of the "prior resort" rule.

The Commissioner refused to entertain jurisdiction, as nonexistent, and his collateral expression on the merits cannot be deemed conclusive. The cause should be remanded for a full hearing of the issue and the making of specific findings essential to judicial review of the Commissioner's ultimate action, assessed by the standard of action laid down in the statute itself. It goes without saying that the identity of the shareholders of such associations cannot be concealed by the management under any and all circumstances. The Commissioner's exercise of discretion must be ruled by the statutory considerations; arbitrary discretion is inadmissible. Good faith, the use to be made of the information, and the interests of the association and its members are of primary concern.

*For affirmance*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING and JACOBS—4.

*For reversal*—Justice HEHER—1.