274 N.J. Super. 63 (1993)
643 A.2d 42
ANTHONY JOHN CAMPIONE, PLAINTIFF,
v.
ADAMAR OF NEW JERSEY, INC. T/A TROPWORLD CASINO AND ENTERTAINMENT RESORT, DEFENDANTS.
Superior Court of New Jersey, Law Division Camden County.
Decided October 22, 1993.
*68 F. Michael Daily Jr. for plaintiff (Quinlan, Dunne, Daily and Higgins, P.C., attorneys).
Thomas F. Bradley for defendant (Hankin, Sandson & Sandman, P.C. attorneys).
WEINBERG, J.S.C.

FACTS AND BACKGROUND
Plaintiff Anthony J. Campione's complaint contains three counts. The first involves a claim for malicious prosecution. Campione asserts that defendant arrested, detained and criminally prosecuted him with a malicious intent to harm resulting in bodily injuries, emotional distress and defamation of his character. In the second count, Campione asserts that the acts alleged in Count I were aimed at denying equal access to card counters of the facilities operated by the defendant. As a result, he asserts he has been denied winnings that he otherwise would have been able to realize from the play of blackjack. In the third count, Campione alleges that TropWorld's discriminatory application of Casino Control Commission Regulations governing the rules of blackjack, was intended to impact upon his individual ability to play the game. He further claims this is a breach of an implied contractual duty of the defendant to supply a fair game of chance giving fair odds. As a result, the plaintiff asserts that he has been prevented from obtaining winnings that he would have realized had defendant not violated this contractual duty.
*69 Campione is a "card counter"[1] who alleges that TropWorld applied Administrative Regulations N.J.A.C. 19:47-2.14 (two-hand play), N.J.A.C. 19:47-2.5 (shuffling at will); and N.J.A.C. 19:47-8.3 (minimum/maximum limits of play) to his play in a discriminatory and arbitrary manner. Plaintiff and Defendant agree that the issue before the court is whether TropWorld, in its application of specific Casino Control Commission regulations to plaintiff Campione's playing of blackjack, is in violation of New Jersey law. They disagree, however, on whether a complaint that the Commission regulations have been implemented in a discriminatory fashion necessarily calls into question the validity of the regulations themselves. The defendant asserts that to state that the regulations have been applied in a discriminatory manner is to suggest that they are invalid since they were written with the intention of giving the casinos reasonable discretion in implementing the regulations. The plaintiff asserts that to ask whether the regulations are invalid is a separate question from whether they have been implemented in a discriminatory fashion.
For the purposes of this motion, the defendant has acknowledged that it applied the Casino Control Commission regulations to plaintiff's play of blackjack because it knows that Campione is a card counter.
The Casino Control Act, N.J.S.A. 5:12-70 to -190 gives the Commission exclusive authority to regulate the casino industry. The Act includes in this mandatory area of regulation the power of "defining and limiting the areas of operation, the rules of authorized games, odds, devices permitted, and the method of operation of such games and devices." Furthermore, it states that:
All gaming shall be conducted according to the rules promulgated by the commission. All wagers and pay-offs of winning wagers at table games shall be made *70 according to rules promulgated by the commission, which shall establish such minimum wagers and other limitations as may be necessary to assure the vitality of casino operations and fair odds to and maximum participation by casino patrons.
[N.J.S.A. 5:12-100(e).]
In addition, the Act gives the Commission the exclusive authority to exclude or eject certain persons from the casino establishments if such person's "presence in a licensed casino would, in the opinion of the commission, be inimical to the interest of the State of New Jersey or of licensed gaming therein." N.J.S.A. 5:12-71a(3).
As to the Commission's authority to receive and review complaints, the Act states the following:
The Casino Control Commission shall have general responsibility for the implementation of the act, as hereinafter provided, including, without limitation, the responsibility:
....
b. To conduct all hearings pertaining to civil violations of this act or regulations promulgated hereunder.
[N.J.S.A. 5:12-63.]
The Act also gives the Division of Gaming Enforcement the power and responsibility to investigate and prosecute violations of the Act or regulations. It states:
a. The Division of Gaming Enforcement shall promptly and in reasonable order investigate all applications, enforce the provisions of this act and any regulations promulgated hereunder, and prosecute before the commission all proceedings for violations of this act or any regulations promulgated hereunder....
b. The division shall:
........
(3) Investigate violations of this act and regulations promulgated hereunder;
(4) Initiate, prosecute and defend such proceedings before the commission, or appeals therefrom, as the division may deem appropriate.
[N.J.S.A. 5:12-76.]
Therefore, it is the responsibility of the Commission and the Division of Gaming Enforcement to enforce the Act and the Commission regulations. However, it is not stated that individual patrons may bring complaints to the Commission. Rather, the Division of Gaming Enforcement has the power to initiate proceedings from a complaint. Furthermore, the Act says nothing *71 about the Commission's authority to provide monetary relief if it finds that a patron suffered damages as a result of either the regulations or a casino's implementation of the regulations.
According to Campione, the first incident occurred on April 27, 1989, at TropWorld. He alleges that the casino employee would not allow him to play more than one hand, although other players at the table were allowed to do so. In his complaint filed with the Casino Control Commission on April 27, 1989, Campione states:
I was playing blackjack and the person next to me was playing two hands. The Floorperson, Lisa C00778 pushed my two $5 bets back to me and instructed the dealer to "deal by me." ... When I pushed the money (two five dollar bets) back into the marked area for bets, the dealer dealt past me. I received no cards even though I had two bets on the table.
Campione asserts that this is discrimination.
The only other documented incident occurred on November 10, 1989, at TropWorld Casino, Campione stated in a sworn affidavit filed with the New Jersey Division of Gaming Enforcement that after losing several $350 bets at a table with a $25 minimum and a $1,000 maximum, a casino employee changed the limit at the table to a $10 minimum-$100 maximum. Campione then placed a $350 bet on the table. Although the casino employee at the table did not instruct Campione that his bet was above the table limit, the employee told the dealer not to pay him the full amount of his bet after Campione won the hand. Campione refused the $100 payout. He alleges that TropWorld allowed other players at the same table to play the higher limit. Campione further asserts, although this is not documented by TropWorld, that the casino used its discretion to shuffle the deck at will during plaintiff's play of blackjack prior to November 10, 1989.
For purposes of this Motion only, TropWorld admits that it has applied the Casino Control Commission regulations in the manner alleged by Campione. Furthermore, it acknowledges that it has done so because it believes plaintiff to be a card counter. However, TropWorld asserts that it is entitled to Partial Summary Judgment because Campione has failed to exhaust his administrative *72 remedies and has failed to state a claim upon which relief can be granted.

I. EXHAUSTION OF ADMINISTRATIVE REMEDIES
Defendant alleges that it is entitled to partial summary judgment because the plaintiff has not exhausted all his administrative remedies. A plaintiff generally cannot pursue judicial review if he or she has failed to exhaust all available administrative remedies. Riggs v. Long Beach Twp., 101 N.J. 515, 503 A.2d 284 (1986). However, as stated in Garrow v. Elizabeth General Hospital, 79 N.J. 549, 401 A.2d 533 (1979), one of the exceptions to this rule is that a plaintiff need not pursue all administrative remedies if doing so would be futile. As the plaintiff asserts, the exhaustion rule "rests on the premise that such remedies are clearly available, clearly effective and completely adequate to right the wrong complained of." Abbott by Abbott v. Burke, 195 N.J.Super 59, 477 A.2d 1278 (App.Div. 1984), reversed on other grounds, 100 N.J. 269, 495 A.2d 376 (1985).
The plaintiff attempted to seek remedies within the administrative structure of the Casino Control Commission. However, his efforts were futile for two reasons. First, as stated in letters to plaintiff dated October 17, 1989 and February 23, 1989, from Kenneth Doss, a paralegal with the Casino Control Commission, a patron does not have a right to request a formal Commission hearing. In addition Doss stated that such a hearing may only be held if the Division of Gaming Enforcement uses its discretion to pursue administrative redress regarding an incident with a casino about which a patron files a complaint. Second, in the same letters, the Commission acknowledged that the review process does not provide any remedy for private patron complaints against casinos. The letters state:
This process is not designed to provide patrons with a forum for redress against casinos. The Commission is without authority to compel casino licensees to pay money damage to patrons, even in instances where a violation occurred. That authority rests with the courts of the State of New Jersey [Emphasis added].
*73 Defendant argues that the letters quoted here and by Campione should not be used to assert that administrative remedies have been exhausted since the letters were sent to plaintiff in reference to complaints he had filed against other casinos. However, due to the administrative structure whereby complaints about any casino are reviewed in the same fashion by the Commission, it is not critical that these letters dealt with other complaints and other Casinos. Since Campione received the above responses from the Commission regarding similar complaints, it is reasonable to conclude that further pursuit of administrative remedies in this case would also have been futile. Furthermore, Campione received a letter dated May 15, 1989, from the Commission responding to his complaint against TropWorld. This letter stated essentially the same information.
Defendant also argues that in the responses to Campione's complaint, the Commission made a valid finding of fact that no violation of the Commission regulations existed. Therefore, it argues, if Campione was not satisfied with this determination, his proper recourse at law was limited to review by the Appellate Division. However, the language in the May 15, 1989, letter from the Commission does not indicate that an official ruling had been made and one could conclude from its language that Campione had no further administrative remedies to pursue. The letter states:
Be advised that the Commission does not conduct hearings on individual patron complaints.... The Commission's legal division has reviewed your complaint. Based upon that review, although your incident was unfortunate, the attitude displayed by the person in question constitutes no violation of the Casino Control Act or Casino Control Commission Regulations.... Although this allegation merits no further action on the part of the Commission, by copy of this letter, together with a copy of your complaint, it is being brought to the attention of TropWorld for its information and whatever action it may deem appropriate.
The letter merely informed Campione that the Commission did not have the authority to provide monetary relief regardless of whether it found a violation. Therefore Campione was required to seek relief through the Superior Court of New Jersey Law Division.
*74 In sum, it is reasonable to conclude that: 1) Campione's complaint was private and therefore outside the realm of review by the Commission; 2) he had exhausted all administrative avenues for redress; and 3) since a dispositive determination had not been made by the Casino Control Commission it was not subject to review by the Appellate Division. Since it would be futile to require Campione to exhaust further potential administrative remedies, his claim is not barred for failure to do so.
A final issue to address in determining if Campione exhausted his administrative remedies is whether a judgment concerning the validity of a regulation involves essentially the same inquiry as determining whether a regulation has been improperly applied. TropWorld argues that the Commission's finding of no violation of Commission regulations should be understood as a statement that the regulations had been correctly applied. If the Commission's statement is assumed to include such a judgment, then there would be no need to address the issue in Superior Court, since the Casino Control Act gives the Commission the exclusive authority to regulate the casino industry. However, this court believes that to question the validity of a regulation itself is a separate inquiry from challenging the application of a regulation. Therefore, the plaintiff is entitled to have his case, alleging discriminatory application or implementation of a valid regulation, heard in Superior Court.
The defendant cites Paterson Redevelopment Agency v. Schulman, 78 N.J. 378, 396 A.2d 573 (1979), to emphasize that the purpose of the requirement of administrative exhaustion is to avoid unnecessary adjudication and to allow factual determinations to rest within an agency with expertise in a given area. However, while these are important objectives, they cannot outweigh the policy of providing a plaintiff a full hearing on the merits of his case and an opportunity to pursue the full array of remedies to which he is entitled. Furthermore, the defendant admits that the Superior Court Law Division has jurisdiction over claims that may originate in the casinos but involve breach of contract or general *75 legal issues such as physical damages. Therefore, since the plaintiff's claim involves allegations of discriminatory implementation of the Commission regulations, the case is properly before this court.

II. ALLEGATIONS OF DISCRIMINATION
TropWorld asserts that Campione's claim should be dismissed for failure to state a claim upon which relief can be granted. The Casino Control Act gives the Commission exclusive authority to set the rules of licensed casino games, which includes the methods for playing those games. Uston v. Resorts International Hotel, Inc., 89 N.J. 163, 445 A.2d 370 (1982). As a result, the Commission, and not the casinos, have the authority to establish maximum/minimum bets, rules for shuffling and rules for two-hand play. Since it is the casinos that actually administer the games, however, they have some discretion in the interpretation of these rules and regulations. This discretion is limited by a legal obligation to treat people fairly. Id., at 173, 445 A.2d 370, citing State v. Schmid, 84 N.J. 535, 562, 423 A.2d 615 (1980). As stated in Uston:

Schmid recognizes implicitly that when property owners open their premises to the general public in the pursuit of their own property interests, they have no right to exclude people unreasonably. On the contrary, they have a duty not to act in an arbitrary or discriminatory manner toward persons who come on their premises.
[Ibid.]
The Casino Control Act also gives the Commission the authority to "establish such minimum wagers and other limitations as may be necessary to assure the vitality of casino operations...." N.J.S.A. 5:12-100(e). Allowing card counters to utilize their skills in an unlimited and unhindered fashion would threaten "vitality of the casino operations," since the casinos undoubtedly lose money when card counters are successful. In this regard, the Commission has the right to limit the effectiveness of card counters through appropriate regulations. However, in the absence of such regulations, the casinos cannot effect their own mechanisms for restricting card counters.
*76 Finally, the Casino Control Act gives the Commission the authority to maintain a list of persons who are excluded from the casinos. The Act states:
"The exclusion list may include any person ... (4) whose presence in a licensed casino establishment would, in the opinion of the Commission, be inimical to the interest of the state of New Jersey or licensed gaming therein; including, but not limited to, cheats and persons whose privileges for licensure have been revoked."
[N.J.A.C. 19:48-1.3.]
The casino licensees do not have any independent authority to exclude persons who have not been placed on a list by the Commission, or who do not fit the description of a person to be excluded under a Commission regulation. The only responsibility of the individual casinos in this matter is "to inform the Commission and Division [of Gaming Enforcement] in writing of the names of persons it believes are appropriate for placement on the exclusion list." N.J.A.C. 19:48-1.7.
In the case at bar, TropWorld admitted to allowing other players at the same table as Campione to play two hands simultaneously while limiting Campione to one hand because he is a card counter. The relevant Commission regulation provides that "A casino licensee may permit a player to wager on more than one box at a blackjack table." N.J.A.C. 19:47-2.14. Although the prior wording of this regulation allowed the Commission to prohibit a patron from wagering more than one box if there were not enough seats for all players, 23 N.J.R. 1784(a), the revised regulation has eliminated this language. Thus, the casinos have discretion as to when to permit a player to wager more than one box. However, by denying the casinos the ability "to act in an arbitrary or discriminatory manner toward persons who come on their premises," Uston v. Resorts International Inc., 89 N.J. at 173, 445 A.2d 370, the scope of this discretion is limited. It is discriminatory to allow others at the same table to play two hands, while limiting Campione to one. Such discrimination is prohibited. This is so even if they did so in pursuit of maintaining the vitality of the casinos, which is a goal of the Commission regulations.
*77 In the incident where Campione was not allowed to play two hands, he asserts that the dealer not only ignored his additional hand but dealt past him completely. Since this is a form of exclusion, and it has already been established that only the Commission has the authority to exclude people, TropWorld went beyond its powers when it excluded Campione in this incident.
In addition to discriminatory application of the Commission regulations dealing with two-hand play, this case involves a violation by TropWorld of ordinary contract law. According to the law of New Jersey, an offeree may manifest assent to an offer through words or conduct. Weichert Co. Realtors v. Ryan, 128 N.J. 427 (1992), 608 A.2d 280. As stated in Weichert Co. Realtors,
Silence does not ordinarily manifest assent, but the relationships between the parties or other circumstances may justify the offeror's expecting a reply and, therefore, assuming that silence indicates assent to the proposal.... Thus, courts have held that when an offeree accepts the offeror's services without expressing any objection to the offer's essential terms, the offeree has manifested assent to those terms.
[Id. at 436, 608 A.2d 280.]
When Campione placed a bet of $350 on the table after the casino employee had lowered the maximum bet to $100, he presented an offer to the casino. The casino then had the option to reject the offer by informing Campione that he had bet above the limit established for the table, and requesting that he lower his bet to a maximum of $100. No casino employee did so. As a result, when the casino allowed Campione to pursue the hand with his $350 bet, this constituted an acceptance of Campione's offer. Therefore, a binding contract was formed between Campione and the casino, and the casino was obliged to pay Campione the full amount of his winning bet.
The language of the Commission regulation dealing with setting of maximum/minimum wagers make it even clearer that TropWorld's failure to reject Campione's $350 wager constituted an acceptance of his offer, and therefore a binding contract. As stated in N.J.A.C. 19:47-8.3:

*78 (a) Whenever a casino licensee is required by rule to provide notice of the rules, pursuant to which a particular table game will be operated, the casino licensee shall post a sign at the gaming table advising patrons of the rules in effect at that table.
(b) Except as provided in (c) below, no casino licensee shall change the rules pursuant to which a particular table game is being operated unless, at least one-half hour in advance of such change, the casino licensee:
(1) Posts a sign at the gaming table advising patrons of the rule change and the time that it will go into effect,
(2) Announces the rule change to patrons who are at the table; and
(3) Notifies the Commission of the rule change, the gaming table where it will be implemented and the time that it will become effective.
(c) Notwithstanding (b) above a casino licensee may at any time lower the permissible minimum wager or change the permissible maximum wager at a table game upon posting a sign at the gaming table advising patrons of the change in the permissible minimum or maximum wager and announcing the change to the patrons who are at the table.
(d) The location, size and language of each sign required by this section shall be submitted to and approved by the Commission prior to its use.
[Emphasis added.]
While the casino employee did post a sign, the record does not show that the change was also announced, as required by the regulation. Therefore, it was reasonable for Campione to conclude his offer had been accepted.
The casino maintains that its sign at the blackjack table setting forth the minimum and maximum bets contained a statement that "A player may exceed table limits with permission of casino management." Therefore, the casino retained unto itself the ability to allow a patron to exceed the maximum bet. But it did not adopt any guidelines for its employees to utilize in making a determination of this nature. Therefore, such a determination would be arbitrary and discriminatory.
As to Campione's claim that TropWorld used its discretion to shuffle at will, thus limiting his success in card counting, the relevant regulation suggests that this is permissible exercise of casino discretion. The rule states:
(a) Immediately prior to commencement of play, after any round of play as may be determined by the casino licensee and after each shoe of cards is dealt, the dealer shall shuffle the cards so that they are randomly intermixed.
........

*79 (g) A reshuffle of the cards in the shoe shall take place after the cutting card is reached in the shoe as provided for in N.J.A.C. 19:47-2.6(1) except that: (1) the casino licensee may determine after each round of play that the cards should be shuffled, (2) When the "Bart Card Shuffle" is utilized a reshuffle shall take place after the cards in the discard rack exceed approximately one deck in number.
(h) A casino licensee may submit to the Casino Control Commission for approval of proposed shuffle, cut card placement, number of cut cards (to include shuffle techniques without the use of any cut cards), location of where the shuffle takes place, who is responsible for shuffling, shuffling equipment (dealing shoes or other dealing devices) and burn card procedures.
[N.J.A.C. 19:47-2.5.]
Since shuffling the cards affects all players at the table without differentiation and precisely the same, even if the casino's intention is to hinder the card counter, it is not discrimination and is thus permissible both under the regulations and under Uston.
The plaintiff argues that although shuffling applies evenly to everyone at the table, it is still discrimination since it has the effect of allowing players at other tables to play at higher odds than players seated at a table with a card counter. This is only true, however, if players at other tables are also counting cards and the dealer refrains from shuffling. Furthermore, the regulation quoted above involving shuffling states nothing about the casinos obligation to ensure that all tables receive a comparable amount of shuffling. Rather, the regulation reflects the idea that each table is required to abide by the regulations as a separate game. Finally, just as a card counter may use discretion to determine when a favorable place in the shoe has been reached, it is permissible for the casinos to exercise similar discretion in deciding when to shuffle as long as this discretion affects everyone at the table evenly. This same logic also follows concerning restrictions of two-hand play and on table limits. As long as the regulations are applied evenly to all patrons at the table, regardless of the casinos' purpose in applying them, the applications are allowable.
The plaintiff directed the court's attention to a statute which he considered dispositive of the issue regarding a casino shuffling the cards at will. N.J.S. 5:12-115a provides

*80 It shall be unlawful: ....
(2) Knowingly to deal, conduct, carry on, operate or expose for play any game or games played with cards, dice, or any combination of games or devices, which have in any manner been marked or tampered with or placed in a condition, or operated in a manner, the result of which tends to deceive the public or tends to alter the normal random selection of characteristics or the normal chance of the game which could determine or alter the result of the game.
This statute entitled "Cheating, Games or Devices in a Licensed Casino" deals with the issue of cheating during a game of chance.
Plaintiff argues that when a casino shuffles the cards prior to the "cut card" being reached that act alters the normal random selection of cards or the normal chance of the game. He further argues that the casino does this (shuffling) when it recognizes the presence of a card counter and perceives that the odds are unfavorable to it and suggests that the casino therefore is nothing more or less than a card counter.
Plaintiff labels the shuffling at will by the casino "cheating." This label is necessary for the plaintiff to argue that shuffling at will violates N.J.S. 5:12-115a(2). He believes that the casino must be neutral and not able to enter into the play of the game by shuffling at will.
The plaintiff's argument and application of N.J.S. 5:12-115a(2) to the casino's shuffling at will during blackjack is misplaced. His labeling of the shuffling at will as "cheating" is specious.
Though plaintiff recognizes that N.J.A.C. 19:47-2.5(a) specifically permits defendant to shuffle at will he argues this act is "cheating." The November 24, 1984 Casino Control Commission meeting minutes include a statement of Commissioner Gushin regarding this defendant being able to shuffle at will should it feel it has a problem with card counters.[2]
"Cheat" has been defined by Webster's dictionary as

*81 (1) to deprive of something valuable by the use of deceit or fraud
(2) to influence or lead by deceit, trick or artifice
(3) to defeat in an expectation or purpose by deceit and trickery
(4) to violate rules dishonestly (as at cards)
Synonyms are: Defraud, swindle overreach
Cheating suggests using trickery that escapes observation.
Cheating suggests using trickery that escapes observation.
Shuffling at will is certainly not cheating and can be properly characterized as the way the Casino Control Commission has leveled the playing field to permit card counters to patronize casinos while minimizing their advantage of counting cards.
The statute is directed at acts such as marked cards, tampered cards, altered cards, dealing a card from other than the top of the deck, etc.
Plaintiff's argument that the defendant violates N.J.S. 5:12-115a(2) when it shuffles at will is misplaced and must fail.
The defendant's assertion that Campione does not possess a private cause of action for damages is incorrect as is defendant's reliance on Miller v. Zoby, 250 N.J. Super. 568, 595 A.2d 1104 (App.Div. 1991), to support this proposition. Miller involved a losing player who maintained that he was entitled to money damages as a result of the casino's violation of Commission regulations. Miller at 570, 595 A.2d 1104. In Miller, the court found the Legislature did not intend to create a private cause of action for a losing player. Id. at 577, 595 A.2d 1104. The case at bar, however, does not involve a losing player asserting damages based on violation of casino regulations. Rather, it involves a player asserting that due to his card counting skills he has been denied equal access to the casino operation itself and that this is discrimination. It cannot be implied that because the Legislature did not create a specific private cause of action for card counters *82 alleging discrimination that such a cause of action should be systematically barred.
Furthermore, defendant's argument that Campione's claim should be dismissed since card counters are not an identified class of persons against whom discrimination is prohibited is not dispositive. Uston held that property owners who open their premises to the public "have a duty not to act in an arbitrary or discriminatory manner toward persons who come on their premises." Uston v. Resorts International Hotel, Inc., supra, 89 N.J. at 173, 445 A.2d 370. Therefore, the fact that Campione is not a member of an enumerated protected class does not mean he is not legally protected from discrimination.
Campione's claim that his constitutional rights have been breached is tenuous. It is true that New Jersey casinos, though privately owned, exist for the purpose of public use. Furthermore, the more an owner for his advantage opens his property to use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it. State v. Schmid, supra, 84 N.J. at 549, 423 A.2d 615. In this regard, the duty not to treat people in a discriminatory fashion is applicable to New Jersey's casinos.
However, Campione's argument that the casinos have interfered with his Constitutional right to think as protected under the First Amendment is not well supported by case law. TropWorld does not claim that Campione should be denied freedom of thought while on its premises. The defendant does assert, however, that it may discriminate against Campione to the extent that these thoughts may threaten the casino's profit margin. It is stated above that discrimination on the basis of Campione's strategic thinking is proscribed.
Campione is entitled to those damages for which causation can be proved regarding discrimination in the implementation of Casino Control Commission Regulations.

*83 CONCLUSION

Since plaintiff has not failed to exhaust his administrative remedies nor failed to state a claim upon which relief can be granted, defendant's motion for partial summary judgment should be granted only as to its right of defendant to shuffle at will and denied regarding its right to discriminate against plaintiff in its implementation of Casino Control Regulations N.J.A.C. 19:47-2.14 (two hand play) and N.J.A.C. 19:47-8.3 (minimum and maximum limit of play). Although Campione may not sue the defendant for tortious interference of a contract to which the defendant is a party, Campione is entitled to damages stemming from TropWorld's breach of the contract as well as any damages he might be able to show as a result of discrimination.
NOTES
[1] A card counter is defined as a player of a certain level of skill "who utilizes information concerning the cards remaining in the shoe to their advantage" in both methods of play and for betting. Phillip Abram & Joel S. Greenberg, The Effects of Eliminating the Surrender Rule at the Atlantic City Casinos, April 28, 1981.
[2] Mr. Gushin: "Mr. Chairman, ...

We looked at this request and were cognizant of the card counter issues related with respect to this petition, but we also believe there are other procedural rules that this Commission has adopted which would counter the possible threat of card counters here. I refer specifically to shuffling at will, which could be utilized at any time, should Tropicana feel that it has a problem with respect to card counters."