GREATE BAY HOTEL & CASINO, d/b/a
Sands Hotel, Casino & Country Club

v.

Leonard H. TOSE, Appellant.

GREATE BAY HOTEL & CASINO, d/b/a
Sands Hotel, Casino & Country Club

v.

Leonard H. TOSE, Greate Bay Hotel
& Casino, Inc., Appellant.

Nos. 93–5560, 93–5600.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit LAR 34.1(a)
August 5, 1994.

Decided Sept. 6, 1994.

Sur Petition for Rehearing Oct. 19, 1994.

Frederick H. Kraus, Sands Hotel & Casino, Atlantic City, NJ, for appellee-cross-appellant.

Leonard H. Tose, pro se.

Before STAPLETON and GREENBERG, Circuit Judges, and ATKINS, District Judge.*

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I. INTRODUCTION

Leonard H. Tose claims to have lost over $3,000,000 while gambling from 1983 through 1987 at the Greate Bay Hotel & Casino (the "Sands") in Atlantic City, New Jersey. In particular, while playing blackjack at the Sands on April 11 and April 26, 1986, Tose lost $1,000 in cash and $1,200,000 on credit. He later paid the Sands $65,000 of the $1,200,000, leaving a balance of $1,135,000. After negotiations, the Sands and Tose

signed a settlement agreement providing for Tose to repay the $1,135,000 in two payments.

Tose, however, did not make the first payment, so the Sands brought an action to enforce the settlement agreement. Tose counterclaimed, alleging that because the Sands knowingly allowed him to gamble while intoxicated, it must return his gambling losses. The district court entered partial summary judgment for the Sands on the settlement agreement thereby obliging Tose to adhere to its terms. However, the court denied the Sands' motion to dismiss the counterclaim for want of subject matter jurisdiction. Thus, the counterclaim was tried to a jury which returned a verdict in the Sands' favor.

Tose appeals from the district court's denial of his post-trial motions.[1] The Sands cross-appeals from the district court's denial of its motion to dismiss Tose's counterclaim for want of jurisdiction. We hold that the district court correctly found that it had subject matter jurisdiction over Tose's counterclaim and that the district court properly denied his post-trial motions. Accordingly, we will affirm the district court's orders.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Sands instituted this action in the Superior Court of New Jersey, but Tose removed it to the district court on the basis of diversity jurisdiction. Thereafter, he filed his counterclaim seeking to recover over $3,000,000 in gambling losses he claimed to have incurred from 1983 to 1987, plus punitive damages and attorney's fees. Tose based his counterclaim on *GNOC Corp. v. Aboud*, 715 F.Supp. 644, 655 (D.N.J.1989), which held that "a casino has a duty to refrain from knowingly permitting an invitee to gamble where that patron is obviously and visibly intoxicated." Specifically, Tose alleged that the Sands intentionally and mali-

---

\* Honorable C. Clyde Atkins, Senior United States District Judge for the Southern District of Florida, sitting by designation.

1. The parties have not briefed the issues relating to the partial summary judgment and Tose's no-

tice of appeal does not indicate that he is appealing from it. Thus, we do not regard an appeal from it as being before this court.

ciously provided him with alcoholic beverages so that he would become intoxicated, continued to provide him with these beverages after he became visibly intoxicated, and encouraged and allowed him to gamble while visibly intoxicated.

The Sands filed a motion for summary judgment seeking an order enforcing the settlement agreement. In addition, the Sands sought a partial dismissal of the counterclaim on the ground that a six-year statute of limitations barred Tose from recovering for any losses before February 26, 1985, as he filed his counterclaim six years after that date. The Sands also contended that the timely portion of Tose's counterclaim was barred because he was an overall winner during that time period (*i.e.,* "net winner theory"). The district court by opinion and order dated December 16, 1991, held the following: (1) the settlement agreement was "enforceable and not voidable because of fraud, mistake or other compelling circumstances"; (2) the statute of limitations, N.J.Stat.Ann. § 2A:14–1 (West 1987), was six years, so Tose "cannot recover any gambling losses prior to February 26, 1985"; and (3) the "net winner theory" did not apply as it "would lead to inequitable results." *Greate Bay Hotel & Casino, Inc. v. Tose,* No. 91–600, 1993 WL 760382, slip op. at 19, 21 (D.N.J. Dec. 16, 1991).[2]

The Sands filed a motion for reargument, contending that the district court lacked subject matter jurisdiction over the counterclaim because the New Jersey Casino Control Commission (the "Commission") has exclusive jurisdiction to order repayment of gambling losses and that *Aboud* should be reexamined in light of *Miller v. Zoby,* 250 N.J.Super. 568, 595 A.2d 1104, 1109 (App.Div.), *certif. denied,* 127 N.J. 553, 606 A.2d 366 (1991). In an opinion and order dated May 12, 1992, the district court rejected the Sands' jurisdictional argument, reasoning that the "counterclaim sounds in common-law negligence … [and] is not based on an implied right of action arising from a violation of the [Casino Control] Act." *Greate Bay Hotel & Casino, Inc. v. Tose,* No. 91–600, slip

op. at 3 (D.N.J. May 12, 1992). The court also rejected the Sands' reliance on *Zoby,* reasoning that while *Zoby* held that a private cause of action did not arise against a casino for violations of the regulations under the Casino Control Act (the "Act"), *Zoby* dealt only with violations of the Act for which " '[t]here is no existing or analogous New Jersey tort action, or contract action'." *Id.* at 4 (quoting *Zoby,* 595 A.2d at 1109). Thus, the district court found that *Zoby* did not apply to Tose's counterclaim, as "New Jersey courts have already fashioned the underlying tort action" which Tose asserted. *Id.* Finally, the court declined to reconsider its decision on the "net winner theory," as the Sands failed to "cite new authority or reasoning which would alter this court's decision." *Greate Bay Hotel & Casino, Inc. v. Tose,* No. 91–600, slip op. at 5 (D.N.J. May 12, 1992).

In view of the district court's pretrial orders, only the counterclaim remained for trial. At trial, the court instructed the jury "to make separate findings of liability for each of seven dates on which Tose allegedly gambled while visibly intoxicated and lost money." *Tose v. Greate Bay Hotel and Casino Inc.,* 819 F.Supp. 1312, 1314 n. 3 (D.N.J.1993). The jury found for the Sands on four of the dates, but deadlocked on the remaining three. *Id.* The district court then "entered judgment in favor of Sands on the dates for which a verdict was returned, and granted Sands' motion for a mistrial as to the claims on the remaining dates." *Id.*

At a second trial regarding the remaining dates, the jury returned a unanimous verdict in the Sands' favor. Tose then moved for a new trial pursuant to Fed.R.Civ.P. 59(e), for a judgment as a matter of law, and for an order vacating the partial summary judgment in the Sands' favor enforcing the settlement agreement. In an opinion and order dated August 16, 1993, the district court denied Tose's motion in its entirety. *Tose v. Greate Bay Hotel and Casino Inc.,* No. 91–600, slip op. at 13 (D.N.J. Aug. 13, 1993). Tose then filed an appeal from the denial of

---

**2.** The district court rejected the Sands' contention that the entire amount of the settlement agreement was then due, reasoning that the agreement did not provide for an acceleration of

the debt upon default and the second payment was not yet due. *Greate Bay Hotel & Casino, Inc. v. Tose,* No. 91–600, slip op. at 19 (D.N.J. Dec. 16, 1991).

his post-trial motions following which the Sands filed a cross-appeal from the order denying its motion to dismiss the counterclaim for lack of subject matter jurisdiction.[3]

## III. SUBJECT MATTER JURISDICTION

### A. Introduction

While it is clear that Tose's counterclaim satisfied the requirements for the district court to exercise diversity jurisdiction as set forth in 28 U.S.C. § 1332(a), the Sands asserts the court did not have subject matter jurisdiction "because exclusive jurisdiction to order restitution of gaming losses was vested with the casino control commission." Brief at 15. Thus, the Sands contends that a New Jersey court would not have entertained Tose's counterclaim seeking to recover his gambling losses. Consequently, it argues that the district court should not have exercised jurisdiction over the counterclaim.[4]

### B. The New Jersey Supreme Court Methodology

■■■ We start our jurisdictional discussion by recognizing that inasmuch as New Jersey law is applicable, we must predict whether the New Jersey Supreme Court would hold that a court has jurisdiction to entertain a claim by a gambler to recover his losses from a casino. *See J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1270–71 (3d Cir.1994).

That court has indicated that, "except in those cases where the legislature vests exclusive primary jurisdiction in an agency, a plaintiff may seek relief in our trial courts." *Abbott v. Burke*, 100 N.J. 269, 495 A.2d 376, 391 (1985); *cf. Swede v. City of Clifton*, 22 N.J. 303, 125 A.2d 865, 871 (1956) (discussing exhaustion of administrative remedies when agency's jurisdiction is not "primary and exclusive"). But if the legislature has vested an administrative agency with exclusive primary jurisdiction, the agency is the only forum in which complaints within that jurisdiction may be adjudicated originally.[5] The Sands contends that through N.J.Stat.Ann. § 5:12–133(b) (West 1988), which provides in part that the "commission shall have exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of this act," the New Jersey Legislature intended to give the Commission exclusive primary jurisdiction over gamblers' claims against casinos for their losses.

The New Jersey Supreme Court demonstrated how it decides if an agency has exclusive primary jurisdiction in *DeFazio v. Haven Sav. and Loan Ass'n*, 22 N.J. 511, 126 A.2d 639 (1956), and *Lally v. Copygraphics*, 85 N.J. 668, 428 A.2d 1317 (1981). In *DeFazio*, the court recognized that the legislature intended N.J.Stat.Ann. § 17:12A–100 (repealed) to supplant the common law right of a depositor/member in a saving and loan

---

**3.** The Sands also appeals from other adverse rulings concerning the counterclaim. However, we do not address these issues because our action in affirming the judgment entered in the Sands' favor renders these issues moot.

**4.** We recognize that the Sands is appealing from an order which, at least in this action, now causes it no harm because it was successful at the trial on the counterclaim. Nevertheless, we are entertaining its appeal as we are obliged to examine the subject matter jurisdiction of the district court. *See Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir.1990).

**5.** It is important to recognize the difference between "primary jurisdiction" and "exclusive primary jurisdiction." Primary jurisdiction " 'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been

placed within the special competence of an administrative body.' " *Boss v. Rockland Elec. Co.*, 95 N.J. 33, 468 A.2d 1055, 1059 (1983) (quoting *United States v. Western Pac. R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1965)). In contrast, when the legislature provides an agency with "exclusive primary jurisdiction," it preempts the courts' original jurisdiction over the subject matter. *See, e.g.*, N.J.Stat.Ann. § 34:15–49 (West 1988) (workers' compensation). While "exclusive primary jurisdiction" might simply be called "exclusive jurisdiction," as the judicial role when there is exclusive primary jurisdiction only can be appellate, *see Lally v. Copygraphics*, 173 N.J.Super. 162, 413 A.2d 960, 963 (App.Div.1980), *aff'd*, 85 N.J. 668, 428 A.2d 1317 (1981), we use the term "exclusive primary jurisdiction" because the Supreme Court of New Jersey used that term in *Abbott v. Burke*, 495 A.2d at 391.

association to compel the association to disclose the names and addresses of the other depositors. *DeFazio,* 126 A.2d at 643–44. Section 17:12A–100 provided that if the saving and loan association failed to supply the depositor requested information:

> such member may ... apply to the commissioner [of banking and insurance] for an order requiring the association to do so.... The commissioner may grant or deny said application ... in whole or in part and may impose such terms and conditions as he shall deem necessary or proper to protect the interests of the association and its other members.... The procedure herein ... shall be *exclusive;* but the action of the commissioner shall be subject to review in the Superior Court, in a proceeding in lieu of prerogative writ.

*DeFazio,* 126 A.2d at 643 (emphasis added).[6]

Pursuant to the statute, a depositor first applied to the commissioner for the names and addresses of the other members, but the commissioner denied his application. Then, the depositor brought suit in the Superior Court seeking an order requiring the association to supply the information. Significantly, the depositor predicated his claim on the common law and thus he did not appeal from the commissioner's decision. The trial court held that it lacked jurisdiction because "original jurisdiction is exclusive in the Commissioner of Banking and Insurance of the State of New Jersey ... and that jurisdiction to review ... the Commission[er's decision] ... is exclusive in the Appellate Division of the Superior Court." 126 A.2d at 641.

In affirming this decision, the New Jersey Supreme Court recognized the following principles of statutory construction: (1) statutory construction requires a court "to determine the purpose and intent of the Legislature"; (2) courts should presume that a statute does not intend to change the common law or a common law right; and (3) to overcome this presumption, "the legislative intent to do so must be clearly and plainly expressed." *Id.* at 643 (citations omitted). The court then held that "the history and substance of the act in question constitute a complete administrative remedy intended by

the Legislature to provide expert administrative service to members, associations and the public, and it is self-sufficient unto itself to a degree where it supplants and by inference repeals the common law relating to such associations." *Id.* at 643–44. Thus, in *De Fazio,* the New Jersey Supreme Court found that the legislature gave the administrative agency exclusive primary jurisdiction over the subject matter of the plaintiff's complaint, thereby depriving the Superior Court of jurisdiction.

In *Lally v. Copygraphics,* 428 A.2d 1317 (N.J.1981), the New Jersey Supreme Court dealt with a similar problem. There, the primary issue was whether N.J.Stat.Ann. §§ 34:15–39.1 and 39.2 (West 1988), preempted an employee's right to seek compensatory and punitive damages in the Superior Court against her employer for retaliatory discrimination against her for seeking workers' compensation. Section 34:15–39.1 provides that the Department of Labor and Industry shall restore the employee to her employment and compensate the employee "for any loss of wages arising out of such discrimination." *See Lally v. Copygraphics,* 173 N.J.Super. 162, 413 A.2d 960, 961 (App.Div.1980). The Superior Court, Appellate Division, in deciding whether "the availability ... of an administrative remedy ... excludes a right of judicial action for both compensatory and punitive damages," stated that the administrative remedy would be exclusive if "the Legislature so intended." *Lally,* 413 A.2d at 968. The Appellate Division concluded that the legislature did not intend the administrative remedy to be exclusive, principally because the court found that the remedy was inadequate to "protect both the public and private interests in enforcement of the policy against retaliatory discharge." *Id.* at 968.

The New Jersey Supreme Court affirmed the Appellate Division's decision substantially for the reasons expressed by the Appellate Division. *Lally v. Copygraphics,* 428 A.2d at 1318. However, the Supreme Court partially modified and qualified the Appellate Division's rationale. *Id.* at 1318–19. The Supreme Court determined that the Appellate

---

**6.** We are quoting section 17:12A–100 as the Supreme Court set it forth in *DeFazio.*

Division's reliance on the "alleged 'inadequacy' of the administrative remedy, as proof of legislative intent not to abridge or preempt a common law remedy, was unnecessary", because "[i]f the Legislature had wanted to foreclose a judicial cause of action, it would have done so expressly." *Id.* at 1319. Therefore, ultimately, in *Lally* the Supreme Court held that inasmuch as the legislature did not specify that the administrative agency's jurisdiction was "exclusive," the legislature vested the Supreme Court and the administrative agency with concurrent jurisdiction over a claim for retaliatory discrimination.

*DeFazio* and *Lally* clearly demonstrate that the New Jersey Supreme Court considers legislative intent in determining whether the legislature has vested exclusive primary jurisdiction in an agency. Moreover, *DeFazio* illustrates that the court will not find that the legislature's use of words such as "exclusive" necessarily requires a conclusion that the legislature intended to give an administrative agency exclusive primary jurisdiction over a subject matter. In *DeFazio*, while the statute stated that the administrative procedure "shall be exclusive," the Supreme Court nevertheless analyzed whether "the *history and substance* of the act in question" showed that the Legislature intended to create "a complete administrative remedy." *DeFazio*, 126 A.2d at 643 (emphasis added).

The case before us clearly is distinguishable from *Lally*, as the legislature provided in N.J.Stat.Ann. § 5:12–133(b) that the "commission shall have exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of this act." In contrast, in *Lally* the statute did not contain comparable exclusivity language. Accordingly, this case is more akin to *DeFazio* because the Act and the statute involved in that case contain language suggesting that the administrative procedures are exclusive. Therefore, in the present case, we believe that the New Jersey Supreme Court would analyze the "history and substance" of the Act and the adequacy of any administrative remedy it includes to determine whether the legislature intended to give the Commission exclusive primary jurisdiction over claims by gamblers against casinos to recover their losses. Tose's counterclaim, of course, seeks to recover his losses, and accordingly we now turn to the Act and consider its history, substance, and administrative remedies to determine if the Commission has exclusive primary jurisdiction over Tose's counterclaim.[7]

### C. *An Overview of the Casino Control Act*

The New Jersey Legislature adopted the Act to "authorize casino gaming and establish the regulatory framework for the casino industry." *Knight v. City of Margate*, 86 N.J. 374, 431 A.2d 833, 836 (1981). The "statutory and administrative controls over casino

---

7. The Sands contends that in light of *Miller v. Zoby*, 595 A.2d 1104, we should not recognize an *Aboud* cause of action. The current posture of this case obviates the need to determine whether *Zoby* casts doubts on the correctness of the *Aboud* court's prediction that the New Jersey Supreme Court would recognize that a casino had a duty to a patron to refrain from permitting him to gamble when he is obviously and visibly intoxicated. Inasmuch as we are upholding the verdict against Tose, the Sands in this case is not injured by our choice not to address this issue. Furthermore, we need not review the *Aboud* ruling pursuant to our obligation to consider the district court's jurisdiction.

In any event, *Zoby* is not inconsistent with *Aboud*. *Zoby* involved the issue whether a casino's violation of certain credit regulations under the Act "should create an implied private cause of action for money damages in favor of a player." *Zoby*, 595 A.2d at 1104. The court held that the legislature did not intend to create a

cause of action which could be asserted against a casino for violating the Act's credit rules. The court noted that the credit rules were created by the Act and had no common law analogue.

Consequently, absent N.J.Stat.Ann. § 5:12–101(f) (West Supp.1994), which provides that violation of the credit rules renders a debt unenforceable against a patron, casino conduct violating the credit rules would not have been actionable. Thus, *Zoby* stands for the limited proposition that when a casino violates a provision or regulation of the Act without a common law analogue, the courts should not recognize an implied cause of action for violation of the provision or regulation. In contrast, while we do not make a ruling on the point, a reasonable argument can be made that a casino owes a common law duty to a patron to prevent him from gambling when it knows he is intoxicated. *See Aboud*, 715 F.Supp. at 653. Therefore, *Zoby* is distinguishable from the present case.

operations [pursuant to the Act] ... are extraordinary, pervasive and intensive." *Id.* Under the Act, the "New Jersey Casino Control Commission was created with power to license, supervise and control casino gambling in Atlantic City." *Bally Mfg. Corp. v. New Jersey Casino Control Comm'n,* 85 N.J. 325, 426 A.2d 1000, 1001 (1981), *appeal dismissed,* 454 U.S. 804, 102 S.Ct. 77, 70 L.Ed.2d 74 (1981). As we stated earlier, the Act provides that the Commission has "exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of this act." N.J.Stat.Ann. § 5:12–133(b).

The Commission has broad powers which include, among other things, the power to decide "all license, registration, certificate, and permit applications and causes," N.J.Stat.Ann. § 5:12–63(a) (West Supp.1994); to "conduct all hearings pertaining to civil violations of [the] act or regulations promulgated hereunder," *Id.* § 63(b) (West Supp. 1994); to "promulgate such regulations as in its judgment may be necessary to fulfill the policies of this act", *Id.* § 63(c) (West Supp. 1994); and to "levy and collect penalties for the violation of provisions of this act and regulations promulgated hereunder." *Id.* § 63(e) (West Supp.1994).

D. *Analysis of the Sands' Contentions*

The Sands contends that within the Act's broad regulatory scheme, the Commission has the exclusive jurisdiction to order restitution of gambling losses and that Tose's counterclaim to recover his losses falls within that exclusive jurisdiction. To show that the Commission has the authority to entertain a claim for restitution, the Sands relies heavily

on N.J.Stat.Ann. § 5:12–129(6) (West 1988), which provides that the Commission has the authority to "[o]rder restitution of any moneys or property unlawfully obtained or retained by a licensee or registrant," and N.J.Admin.Code tit. 19, § 50–2.1, which, through N.J.Admin.Code tit. 13, § 2–23.1(b), prohibits casinos from serving alcoholic beverages "to any person actually or apparently intoxicated." Administrative section 50–2.1, however, does not resolve definitively whether a casino has "unlawfully obtained" a patron's gambling losses if the casino has violated the section, as it does not mention gambling. Nevertheless, we think that the Commission would conclude that a casino has "unlawfully obtained" a patron's money if it knowingly allows him to gamble while intoxicated.[8] Consequently, in light of statutory section 5:12–129(6), which empowers the Commission to award restitution for monies unlawfully retained, we believe that the Commission has the authority to award restitution to a patron for gambling losses incurred if a casino knowingly allows him to gamble while he is visibly intoxicated.

That conclusion, however, does not require us to hold that the Commission has exclusive primary jurisdiction over Tose's counterclaim. The Sands, however, relies on N.J.Stat.Ann. § 5:12–133(b); N.J.Stat.Ann. § 5:12–1(b)(6) (West Supp.1994); and N.J.Stat.Ann. § 5:12–63(c) to contend that the Commission does have exclusive primary jurisdiction.[9] As we have stated earlier, section 5:12–133(b) provides that the Commission has "exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of this act." Section 5:12–63(c) provides that the Commis-

---

8. The district court believed that Tose did not have to prove that the Sands' conduct was the proximate cause of his losses in the traditional sense, and we will assume without deciding that the gambler need not show that the intoxication led to the losses. However, this point is troublesome for an intoxicated gambler might play blackjack perfectly in accordance with percentages well known to many gamblers and yet lose. If that happened, it would be difficult to find that the casino's conduct in allowing him to gamble was the proximate cause of his losses. Similarly, a gambler who had not consumed alcoholic beverages also might lose. The point is, of course, that casinos predicate their operations on the

theory that overall the house will win and the gamblers will lose.

9. The Sands also relies upon N.J.Admin.Code tit. 19, § 40–1.6, which provides that "[i]n any matter not governed by these rules and regulations, the Commission or Division [of Gaming Enforcement] shall exercise its discretion so as to carry out the purposes of the Act." This regulation merely buttresses the express legislative grant to the Commission of the authority to "promulgate such regulations as in its judgment may be necessary to fulfill the policies of this act." *See* N.J.Stat.Ann. § 5:12–63(c).

sion has the responsibility to "promulgate such regulations as in its judgment may be necessary to fulfill the policies of this act." Section 5:12–1(b)(6) provides that one of the policies of the Act is that "[a]n integral and essential element of the regulation and control of such casino facilities by the State rests in the public confidence and trust in the credibility and integrity of the regulatory process and of casino operations." Clearly, the policy expressed in section 5:12–1(b)(6) is a vital part of the Act, as the New Jersey Legislature "took considerable pains to determine and expound the State's public policy involving casino gambling" and its potential impact upon the public. *Knight v. City of Margate,* 431 A.2d at 836. Furthermore, " 'the public confidence and trust in the credibility and integrity of the regulatory process and of casino operations' is [a]t the very heart of the public policy embraced by the new law." *Id.* at 837 (quoting N.J.Stat.Ann. § 5:12–1(b)(6)). *See also Greenberg v. Kimmelman,* 99 N.J. 552, 494 A.2d 294, 298 (1985).

These sections, however, do not expressly vest the Commission with "exclusive primary jurisdiction" to adjudicate gamblers' claims for recovery of their losses. Accordingly, we can reach three possible conclusions with respect to whether a court or the Commission may assert jurisdiction over such claims: (1) the legislature gave the Commission exclusive primary jurisdiction; (2) the legislature gave the Commission concurrent jurisdiction with the Superior Court which has jurisdiction under the New Jersey Constitution;[10] or (3) the legislature did not address the jurisdictional question, and thus the Superior Court has exclusive jurisdiction under the New Jersey Constitution. *See Lally,* 428 A.2d at 1319 ("[J]urisdiction to redress an unlawful retaliatory discharge is concurrent."). We, however, only need decide whether the legislature gave the Commission exclusive primary jurisdiction to hear Tose's counterclaim, for under either of the other two possibilities the district court had jurisdiction over it.

Inasmuch as the Act gives the Commission "exclusive" jurisdiction, but does not mention "exclusive primary" jurisdiction or expressly preclude the courts from entertaining claims by gamblers to recover for their losses, we use an analysis comparable to that in *DeFazio,* and consider the adequacy of the administrative remedy. Initially, on this point, we note that while the Act provides for "restitution," it does not empower the Commission to award compensatory or punitive damages. *See* N.J.Stat.Ann. § 5:12–129(6). We recognize that arguably because "the powers of an administrative agency should be liberally construed to permit the agency to achieve the task assigned to it," *In re Heller Suspension,* 73 N.J. 292, 374 A.2d 1191, 1197 (1977) (quoting *In re Comm'r v. Parkwood Co.,* 98 N.J.Super. 263, 237 A.2d 265, 270 (N.J.Super.Ct.App.Div.1967)), the Commission has the implied power to award compensatory or punitive damages. However, we believe that the New Jersey Supreme Court would reject that argument and instead would adopt the approach set forth in *Sheeran v. Progressive Life Ins. Co.,* 182 N.J.Super. 237, 440 A.2d 469, 475 (App.Div.1981) (internal quotation marks omitted), which held that absent an "explicit statutory grant of power," an administrative agency may not impliedly act as a "court of claims." *See also State v. Osborn,* 32 N.J. 117, 160 A.2d 42, 47 (1960) (Supreme Court doubted that court would be created by implication). Thus, the Commission does not have the authority to award compensatory or punitive damages, as its authority to compensate an injured patron is limited to "restitution."[11] The Commission's inability to award damages illustrates the inadequacy of the administrative remedy, thus suggesting that the legislature did not intend to give the Commission "exclusive primary jurisdiction" over Tose's counterclaim.

An even more telling demonstration of the inadequacy of the administrative remedy is that an individual patron does not have the right to prosecute a claim against a casino

---

10. The New Jersey Constitution provides that the "Superior Court shall have original general jurisdiction throughout the State in all causes." N.J. Const. (1947), art. 6, § 3, para. 2.

11. We are not certain that compensatory damages and restitution are always equivalent, though we recognize that in a particular case they might be the same thing.

before the Commission. The Act provides that the "Division of Gaming Enforcement shall promptly and in reasonable order investigate all applications, enforce the provisions of this act and any regulations promulgated hereunder."[12] N.J.Stat.Ann. § 5:12–76 a (West Supp.1994). Thus, the Division of Gaming Enforcement would have the responsibility of enforcing a regulation prohibiting casinos from allowing visibly intoxicated patrons to gamble.

Moreover, the Commission has recognized that it "does not conduct hearings on individual patron complaints," and that its review "process is not designed to provide patrons with a forum for redress against casinos." *See Campione v. Adamar of New Jersey, Inc.*, 274 N.J.Super. 63, 643 A.2d 42, 46–47 (Law Div.1993). Additionally, the Commission has stated that it "is without authority to compel casino licensees to pay money damage[s] to patrons, even in the instances where a violation occurred. That authority rests with the courts of the State of New Jersey." *Id.* Thus, it is clear that a gambler may not prosecute a complaint against a casino before the Commission. Indeed, to the extent that a gambler may have any administrative remedy at all, he must rely on the Division of Gaming Enforcement to seek that remedy for him. This regime convinces us that a gambler seeking to recover his losses from a casino does not have an adequate administrative remedy. Thus, following the methodology of *DeFazio*, we conclude that the legislature did not vest the Commission with exclusive primary jurisdiction over claims such as Tose makes in his counterclaim. Consequently, we hold that the Superior Court would have had jurisdiction over the counterclaim if Tose had not removed the

case to the district court, and accordingly the district court had jurisdiction. Therefore, we will affirm the order of May 12, 1992, denying the Sands' motion to dismiss the counterclaim for want of jurisdiction.

## IV. TOSE'S MOTION FOR A NEW TRIAL

■ Tose raises several issues challenging the district court's order of August 16, 1993, denying him a new trial.[13] We review an order denying a new trial under an abuse of discretion standard "unless the court's denial of the motion is based on the application of a legal precept, in which case the standard of review is plenary." *Rotondo v. Keene Corp.*, 956 F.2d 436, 438 (3d Cir.1992). In this case we primarily use the abuse of discretion standard, as Tose challenges discretionary rulings for the most part. As the district court stated, Tose asserted five general grounds for granting a new trial. We, however, address only two of them in detail.[14]

### A. *The Attempt to Call Susie Olden as a Witness*

■ First, Tose claims that he is entitled to a new trial on the ground that Sands' counsel improperly announced in front of the jury that he was calling as a witness Susie Olden, a cocktail waitress at the Sands. Olden was identified by "a number of witnesses . . . as a cocktail waitress at the Sands Casino who regularly served Tose while he was gambling." *Tose v. Greate Bay Hotel and Casino Inc.*, No. 91–600, slip op. at 3–4 (D.N.J. Aug. 13, 1993). At trial, despite the district court's earlier decision that the Sands could not call Olden as a witness because it had not identified her as a potential witness

---

**12.** The Division of Gaming Enforcement was "established in the Department of Law and Public Safety" and is "under the immediate supervision of a director who shall also be sworn as an Assistant Attorney General and who shall administer the work of the division under the direction and supervision of the Attorney General." N.J.Stat.Ann. § 5:12–55 (West 1988).

**13.** Tose was represented at trial by counsel but is *pro se* on this appeal. We have considered his grounds for appeal in part by examining how his contentions were presented in the district court.

**14.** We reject summarily Tose's other arguments, including that the jury instructions were flawed, the verdict was against the weight of the evidence, certain evidence was admitted improperly and other evidence was excluded improperly, and the court acted improperly when Tose's wife became emotionally upset during her testimony. We do comment briefly on one additional point he raises, that the court acted prematurely in declaring a mistrial when the first jury deadlocked. We observe that the only possible remedy which we could grant even if the court did act prematurely would be to grant a new trial. Of course, the district court did grant a new trial.

pursuant to a pretrial order, the Sands attempted in the presence of the jury to call her as a witness. Although the district court sustained Tose's objection to this attempt and "indicated that the Sands' counsel had behaved improperly in making his announcement," the court did not grant Tose's request for an instruction describing why her testimony was excluded. *Id.* at 4.

Tose contends that the Sands' conduct prejudiced him by misleading the jury into believing "that it was ... [his] counsel who prevented them from hearing testimony of a person who could be considered potentially the most knowledgeable witness on the issues involved in the case relating to how much alcohol was served to [him] and what [his] condition was with regard to intoxication on the dates in question." Supp. app. at 27. Moreover, Tose contends that because it was "reasonably probable that this improper conduct influenced the verdict ... a new trial must be granted." *Id.* at 28.

We have explained that when there is improper conduct, the test for determining whether to grant a new trial "is whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 207 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993) (quoting *Draper v. Airco, Inc.,* 580 F.2d 91, 97 (3d Cir.1978)). *See also Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1178–79 (3d Cir. 1993). Tose offers a plausible theory as to what the jury might have inferred from his objection to the improper attempt to call Olden as a witness, *i.e.,* Tose did not want Olden to testify because he feared her testimony would support the Sands' defense.

However, we cannot say that the district court abused its discretion in concluding that it could not "find it 'reasonably probable' that this comment by Sand's counsel had any significant influence on the jury's deliberations." *Tose v. Greate Bay Hotel and Casino Inc.,* No. 91–600, slip op. at 4 (D.N.J. Aug. 13, 1993). The district court reasoned that the assertions were "a single remark;" that any prejudice to Tose would be through inference only, "as the statement on its face is

not prejudicial"; and that "this incident took up only a few moments in a weeks-long trial." *Id.* In sum, as the district court was in the best position to make this decision and because its reasons for denying the motion for the new trial were reasonable, we will affirm the district court's ruling on this point.

B. *The New Witnesses and Exhibits*

■ Tose contends that the district court committed reversible error by allowing the Sands to call witnesses and introduce exhibits not previously identified pursuant to the court's pretrial order. We review a district court's decision to allow use of witnesses and exhibits not previously identified under an abuse of discretion standard. *Beissel v. Pittsburgh and Lake Erie R. Co.,* 801 F.2d 143, 150 (3d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987). We determine whether there has been an abuse of discretion by considering four factors: "(1) the prejudice or surprise in fact to the opposing party, (2) the ability of the party to cure the prejudice, (3) the extent of disruption of the orderly and efficient trial of the case, and (4) the bad faith or willfulness of the non-compliance." *Id.* at 150.

■ Tose claims that the primary prejudice caused by the testimony from these witnesses and by the exhibits was that he "was forced, at the last minute, to attempt to prepare to confront numerous previously unidentified witnesses, without being in a position to investigate and obtain information or witnesses through the discovery process that could be used to contradict and/or raise questions about their testimony." Supp. app. at 30. In rebuttal, the Sands contends that the measures taken by the district court "to cure any potential prejudice and Tose's failure to seek a postponement," show that the district court was well within its discretion in denying the motion for a new trial. As curative measures, the district court, among other things, required the Sands to make the witnesses promptly available for depositions, to bear the expense of the depositions, and to produce all personnel files for the witnesses. Furthermore, the court permitted Tose to call three "new" witnesses.

As Tose does not contend that he requested a postponement, we find that the district court did not err in allowing both the testimony from the previously unidentified witnesses and the use of the exhibits. Tose's main objection is that he had insufficient time to prepare to impeach the witnesses. But the district court took steps to permit an effective cross-examination. Accordingly, we find that the district court acted well within its discretion in denying the motion for a new trial based on the admission of the testimony from the previously unidentified witnesses and of the exhibits. Therefore we will affirm the district court's decision on this point.

## V. CONCLUSION

In view of the aforesaid, we will affirm the orders of the district court of May 12, 1992, and August 16, 1993.

Before: SLOVITER, Chief Judge, and STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, COWEN, NYGAARD, ALITO, ROTH, LEWIS, and McKEE, Circuit Judges, and ATKINS, District Judge.*

## SUR PETITION FOR REHEARING

### Oct. 19, 1994

The petition for rehearing filed by the appellant-cross-appellee Leonard H. Tose, in the above captioned matter having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the court in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.