649 A.2d 1269

BONNIE INGERSOLL, PLAINTIFF, AND BRIAN LIHOU, PLAIN-
TIFF–APPELLANT, v. AETNA CASUALTY AND SURETY COM-
PANY, A/K/A AETNA LIFE AND CASUALTY, A/K/A AETNA,
DEFENDANT–RESPONDENT, AND THE NEW JERSEY AUTO-
MOBILE FULL INSURANCE UNDERWRITING ASSOCIATION,
HERBERT E. GASKILL INSURANCE AGENCY, HERBERT E.
GASKILL, JR., AND JOHN DOE(S), A THROUGH Z, FICTI-
TIOUS NAME(S), PERSON(S) OR UNDERWRITER(S), INDIVID-
UALLY JOINTLY, SEVERALLY AND IN THE ALTERNATIVE,
DEFENDANTS.

Argued September 13, 1994—Decided December 13, 1994.

----

*Gary D. Ginsberg* argued the cause for appellant (*Mr. Ginsberg,* attorney; *Brian P. O'Connor,* on the brief).

*John J. Dwyer* argued the cause for respondent (*Cozen and O'Connor,* attorneys).

PER CURIAM.

The New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–1 to –35 (No–Fault Law), contains what is commonly known as an anti-stacking provision, *N.J.S.A.* 39:6A–4.2 (section 4.2). That statute prohibits recovery of personal-injury-protection (PIP) benefits under more than one automobile-insurance policy for injuries sustained in any one accident. The question posed by this appeal is whether that statutory prohibition against "stacking" is limited to basic PIP benefits or whether it forecloses as well recovery of extended medical-expense benefits under two policies when the "stacking" would not result in double recovery of medical expenses.

The trial court ruled that under the statutory bar such "stacking" was not permitted. The Appellate Division affirmed, 269 *N.J.Super.* 192, 635 *A.*2d 101 (1993), and we granted certification, 135 *N.J.* 299, 639 *A.*2d 299 (1994). We reverse.

I

Plaintiff Brian Lihou was the owner of an automobile insured with New Jersey Full Automobile Insurance Underwriting Association (JUA). In October 1987, Brian was riding his brother's motorcycle when it collided with an automobile operated by one Lisa Hamilton. As a result of that accident Brian sustained catastrophic injuries and incurred medical bills in excess of $35,-000.

Because he was riding a motorcycle when the accident occurred, Brian was not eligible to recover his medical expenses under the basic PIP coverage of his automobile policy with JUA. See *N.J.S.A.* 39:6A–4, –2a. However, in keeping with the regulatory mandate of the Commissioner of Insurance, see *N.J.A.C.* 11:3–7.3(b), Brian's JUA policy contained an extended-medical-expense-benefits provision, which furnished coverage for medical expenses resulting from a broader scope of accidents, including those incurred while driving a motorcycle under certain circumstances. The limit of that coverage was $10,000, which JUA paid to Brian.

At the time of the accident, Brian was living with his mother, plaintiff Bonnie Ingersoll. (References hereinafter to "plaintiff" are to Brian.) Ingersoll owned an automobile that was insured by Aetna Casualty & Surety Co. (Aetna), whose policy extended coverage to Brian as well inasmuch as he was a "relative" of the named insured, defined in the standard policy as "a person related to the named insured by blood, marriage or adoption * * * who is a resident of the same household as the named insured." See Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law* app. C–1 at 561 (1995).

Like the JUA policy, the Aetna policy also contained an extended-medical-expense-benefits provision with a limit of $10,000. When plaintiff sought recovery under that provision, Aetna denied coverage on the ground that section 4.2 prohibited the "stacking" of PIP benefits and that the extended medical-expense benefits constituted PIP benefits for purposes of that statute. Plaintiff sued to recover the $10,000 under Aetna's extended-medical-expense-benefits provision.

In affirming the trial court's summary judgment for Aetna, the Appellate Division relied not only on the anti-stacking provision of section 4.2 but also on the language in Aetna's policy. 269 *N.J.Super.* at 196–98, 635 *A.*2d 101.

## II

The No–Fault Law prohibits the stacking of PIP benefits. Section 4.2 provides, in pertinent part, as follows:

[T]he personal injury coverage of the named insured shall be the primary coverage of the named insured and any relative of the named insured's household who is not a named insured under an automobile insurance policy of his own. No person shall recover personal injury protection benefits under more than one automobile insurance policy for injuries sustained in any one accident.

The Legislature enacted the foregoing section as part of the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984, *L.* 1983, *c.* 362, § 12. The sparse legislative history indicates that the no-fault provisions of the act were structured to "tighten statutory eligibility requirements for personal injury protection coverage so as to comport with the original intent of the no fault law." *Introductory Statement to Assembly Bill No. 3981* (1983). We note too that when the accident giving rise to this suit occurred, the No–Fault Law provided for unlimited medical expenses, a circumstance that continued until 1990, when *L.* 1990, *c.* 8, put a $250,000 cap on medical expenses compensable under PIP. See Craig & Pomeroy, *supra,* at § 7:7 (discussing stacking of PIP benefits).

The question is whether the extended-medical-expense-benefits provision of the Aetna policy is beyond plaintiff's reach because of section 4.2's anti-stacking provision. We think not. The extended medical benefits are a creature not of statute but of a regulation promulgated under legislative authority by the Commissioner of Insurance. That regulation, *N.J.A.C.* 11:3–7.3(b), requires that every automobile policy "include excess medical payments coverage, corresponding to Section II, Extended Medical Expense Benefits Coverage of the personal automobile policy."

The regulation's reference to "Section II" is to Section II of the standard personal automobile policy, of the type included in Craig & Pomeroy, *supra,* Appendix C–1 at 565–66. Section II of the Aetna policy follows in every significant respect the sample provided in Craig & Pomeroy. Although we do not have the JUA policy before us, we are told that in respects relevant to this case, it is the same as Aetna's.

Under the heading "Extended Medical Expense Benefits Coverage" the Aetna policy binds the carrier to

pay medical expense benefits not to exceed the total aggregate amount stated in the schedule [ ($10,000) ] * * * with respect to bodily injury sustained by an injured person, caused by an accident * * * and arising out of the ownership, maintenance or use * * * of an insured automobile or of a highway vehicle not owned by or furnished or available for the regular use of the named insured or any relative of the named insured.

A motorcycle fits Section II's definition of "highway vehicle." The policy makes the extended coverage furnished by Section II unavailable to an insured person who is entitled to basic PIP benefits. Finally, the Section II coverage "does not apply to loss or expense to the extent that benefits are payable or are required to be provided therefore under any other automobile no-fault law."

Although the matter is by no means without doubt, as we understand the statutory scheme, the Commissioner's implementation thereof, and the insurance industry's accommodation thereto, the extended-medical-expense-benefits provision represents a very narrow window of coverage to a limited class of persons who, like plaintiff in this case, are ineligible for basic PIP benefits. Recognizing the unavailability of basic PIP's unlimited (now $250,000) medical coverage but wishing nevertheless to address in some small measure the medical-expense disaster that can befall those injured by use of a "highway vehicle" (as distinguished from an automobile), the Commissioner, acting under legislative authorization, has mandated first-party coverage of up to $10,000 in medical expenses. The Aetna policy, which follows the standard form, recognizes the difference between that coverage and basic PIP by declaring the extended coverage inapplicable if the insured person is entitled to basic PIP benefits.

We recognize that the arrangement of the standard policy form might be viewed as creating some ambiguity: it sets forth its extended-medical-expense-benefits coverage in Section II of an endorsement entitled "Personal Injury Protection Endorsement," Section I of which is labeled "Basic Personal Injury Protection." To the extent that that arrangement bears on the substantive question of policy interpretation, it tends to support Aetna's argument: (1) both section 4.2 and the policy prohibit the stacking of PIP benefits; (2) extended medical-expense benefits are PIP

benefits; therefore, (3) plaintiff may not stack extended medical-expense benefits. On the other hand, that same arrangement points up the industry's recognition of a significant functional difference between basic PIP coverage and Section II coverage—a difference that is underscored by the disallowance of Section II benefits when the insured person is entitled to basic PIP coverage. On balance, we view the insurance-policy arrangement as hardly critical to our determination. The differences in the coverages furnished by basic PIP and Section II of the policy are sufficient to satisfy us that the Legislature did not intend to include the extended-medical-expense-benefits coverage in section 4.2's prohibition against stacking.

As an alternative basis for its holding the Appellate Division relied on the Aetna policy's condition of coverage that the extended-medical-expense-benefits provision "does not apply to loss or expense to the extent that benefits are payable or are required to be provided therefor under any other automobile no-fault law or under any other automobile medical payments insurance." The court below concluded that because plaintiff had received $10,000 under the extended-medical-expense-benefits coverage of his JUA policy, he was foreclosed by the foregoing language from recovering under the same coverage provided by Aetna. 269 *N.J.Super.* at 196, 635 *A.*2d 101.

That reading misperceives the purpose of the quoted "other insurance" condition of coverage. Had the policy said that the Section II benefits would not apply *if* other described benefits were payable, the court below would of course be correct. But the language of "to the extent that benefits are payable" acts as no more than a prohibition against an insured recovering twice for the same medical expenses. The "to the extent" language provides for a credit or set-off; it does not act as a disqualifier.

Supporting our determination are sound public-policy considerations, perhaps best illustrated by the circumstances of this case. Plaintiff's medical expenses exceed $35,000. He has no access to the formerly-unlimited basic PIP coverage for those

expenses. His own automobile insurer, JUA, has paid $10,000 under its extended-medical-expense-benefits coverage. Against the total expense of $35,000, the JUA's $10,000 payment must be credited, leaving a balance of $25,000. Requiring Aetna to pay its $10,000 limit—the maximum that the carrier can provide under the Commissioner's regulation—will result in no windfall to plaintiff, no double recovery of any medical expense, and indeed plaintiff will be left with a balance of over $15,000 in uncompensated expenses. We do not believe that public policy, legislative intent, or the Commissioner's exercise of administrative authority are offended by our result. And if we have erred, our mistake is correctable with little more than the stroke of the legislative pen.

## III

Judgment reversed. The cause is remanded to the Law Division for entry there of judgment for plaintiff.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*OPPOSED*—None.