833 A.2d 1098

DANA M. WARNIG, PETITIONER–RESPONDENT, v. ATLANTIC COUNTY SPECIAL SERVICES, RESPONDENT–RESPONDENT, AND PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, INTERVENOR–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 17, 2003—Decided October 27, 2003.

Before Judges KING, BRAITHWAITE and LISA.

*John J. Jasieniecki* argued the cause for intervenor-appellant (*Thomas H. Green,* attorney; *Mr. Jasieniecki,* of counsel and on the brief).

*Craig R. Fishman* argued the cause for petitioner-respondent (*Kotlikoff, Littlefield & Fishman,* attorneys; *Mr. Fishman,* on the brief).

*William P. Freeman* argued the cause for respondent-respondent (*Freeman, Barton, Huber & Sacks,* attorneys; *David A. Sacks,* on the brief).

The opinion of the court was delivered by

BRAITHWAITE, J.A.D.

The issue presented in this appeal is whether an insurer who pays benefits to its insured pursuant to the extended medical expense benefit ("Med–Pay") may be reimbursed for this payment in a workers' compensation proceeding pursuant to *N.J.S.A.* 39:6A–6. The Judge of Compensation held that the insurer could not be reimbursed because the statute did not apply to Med–Pay benefits. We agree and affirm.

Petitioner, Dana Warnig, was injured in a motor vehicle accident on April 26, 1999, while working as a bus aide for respondent Atlantic County Special Services. At the time of the accident, she was a passenger on a bus owned and operated by respondent. On May 28, 1999, she filed a claim petition for workers' compensation benefits. At the time of the accident, she maintained a personal automobile insurance policy with intervenor Prudential Property & Casualty Insurance Company ("Prudential") that provided $250,000 in personal injury protection ("PIP") benefits, and $10,000 in Med–Pay benefits.

Petitioner received authorized medical treatment paid by respondent's workers' compensation carrier. Thereafter, the authorized treating physicians determined that petitioner had received maximum treatment. The workers' compensation carrier refused to pay for any further treatment. It concluded that the additional treatment was neither reasonable nor necessary. Petitioner sought and received chiropractic treatment on her own. Petitioner then sought PIP benefits from Prudential under her personal automobile policy. Because she was a passenger on a bus at the time of the accident, she did not qualify for PIP benefits. Thus, Prudential paid a total of $10,000 in chiropractic bills under the Med–Pay portion of petitioner's policy.

Prudential then moved to intervene in petitioner's pending workers' compensation action seeking reimbursement of the Med Pay benefits paid on petitioner's behalf. Leave to intervene was granted on January 11, 2001. Respondent did not oppose the motion. Approximately eleven months later, respondent moved to dismiss Prudential's intervention in the workers' compensation proceeding. Following oral argument on March 21, 2002, the Judge of Compensation held that although Prudential had a right to intervene in the workers' compensation action, under the collateral source rule, N.J.S.A. 39:6A–6, Prudential was not entitled to reimbursement of the Med–Pay benefits. The underlying workers' compensation claim was settled on July 25, 2002. There was also a third-party claim that was settled with the tortfeasor.

Prudential argues that the compensation judge incorrectly held it was not entitled to recover Med–Pay benefits under the collateral source rule. Prudential contends that benefits paid under the Med–Pay portion of a personal automobile policy are no different from PIP benefits and should receive the same treatment under the collateral source rule, N.J.S.A. 39:6A–6, which entitles PIP carriers to seek reimbursement from workers' compensation carriers. Prudential contends that treating PIP and Med–Pay differently removes the incentive for the insurance carrier, here the insured party's personal automobile insurance carrier, to pay

medical bills first and then seek reimbursement later. It urges that continuing to treat the two differently may cause the insurance carrier to alter its current policy, by slowing down the rate at which it pays medical bills or entirely abrogating its obligation to pay medical bills prior to seeking reimbursement. Prudential also claims that the compensation judge's ruling resulted in a windfall to petitioner and placed her in a better position than injured employees who are not eligible for Med–Pay.

The recovery of PIP benefits paid in a workers' compensation action is governed by the collateral source statute, which provides:

The benefits provided in sections 4 and 10 of P.L.1972, c. 70 (C.39:6A–4 and 39:6A–10), the medical expense benefits provided in section 4 of P.L.1998, c. 21 (C.39:6A–3.1) and the benefits provided in section 45 of P.L.2003, c. 89 (C.39:6A–3.3) shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits, collectible under workers' compensation insurance, employees' temporary disability benefit statutes, medicare provided under federal law, and benefits, in fact collected, that are provided under federal law to active and retired military personnel shall be deducted from the benefits collectible under sections 4 and 10 of P.L.1972, c. 70 (C.39:6A–4 and 39:6A–10), the medical expense benefits provided in section 4 of P.L.1998, c. 21 (C.39:6A–3.1) . . .

If an insurer has paid those benefits and the insured is entitled to, but has failed to apply for, workers' compensation benefits or employees' temporary disability benefits, the insurer may immediately apply to the provider of workers' compensation benefits or of employees' temporary disability benefits for a reimbursement of any benefits pursuant to sections 4 and 10 of P.L.1972, c. 70 (C:39:6a–4 and 39:6A–10), medical expense benefits pursuant to section 4 of P.L.1998, c. 21 (C:39:6A–3.1) pursuant to section 45 of P.L.2003, c. 89 (c.39:6A–3.3).

[*Ibid.*]

In ruling that Prudential was not entitled to reimbursement, the compensation judge stated that the statute was clear in not covering Med–Pay benefits. She also found that petitioner did not obtain a double recovery because only Prudential paid the benefits in dispute.

PIP benefits are generally limited to accidents involving an "automobile" as defined by *N.J.S.A.* 39:6A–2. A regulatory provision, *N.J.A.C.* 11:3–7.3(b), requires some medical expense benefits to be provided for injuries resulting from accidents *not otherwise qualifying for PIP medical expense benefits.* Thus, the provision

provides, to a very limited extent, some coverage to an injured party who is ineligible for PIP benefits. *Ingersoll v. Aetna Cas. and Surety Co.*, 138 *N.J.* 236, 240, 649 *A.*2d 1269 (1994).

Pursuant to *N.J.A.C.* 11:3–7.3(b), every automobile policy must "include excess medical payments coverage, [colloquially known as "med-pay"] corresponding to Section II, Extended Medical Benefits Coverage of the personal automobile policy." The reference to " 'Section II' is to Section II of the standard personal automobile policy." *Ingersoll, supra*, 138 *N.J.* at 239, 649 *A.*2d 1269. The regulation further states that "insurers must include a minimum coverage of $1,000 and may offer coverage of $10,000." *N.J.A.C.* 11:3–7.3(b). Thus, Med–Pay "benefits are a creature not of statute but of a regulation promulgated under legislative authority by the Commissioner of Insurance." *Ingersoll, supra*, 138 *N.J.* at 239, 649 *A.*2d 1269. Here, petitioner received $10,000 in Med–Pay benefits.

Med–Pay benefits are expressly not available in cases where a party is entitled to basic PIP benefits or where other PIP coverage applies. *N.J.A.C.* 11:3–7.3(b). In *Ingersoll*, our Supreme Court firmly established that benefits paid under the Med–Pay portion of an automobile policy do not fall within the purview of *N.J.S.A.* 39:6A–4 or *N.J.S.A.* 39:6A–10. *Ingersoll, supra*, 138 *N.J.* at 239, 649 *A.*2d 1269. The plaintiff in Ingersoll sustained catastrophic injuries in a motorcycle accident and accumulated medical bills in excess of $35,000. Because his injuries occurred while he was operating a motorcycle, he was ineligible for PIP benefits under both his own automobile policy and his mother's, with whom he resided. *Id.* at 238, 649 *A.*2d 1269. The plaintiff's insurance company paid the maximum of $10,000 in medical bills. However, his mother's insurer, Aetna, disclaimed, arguing that extended medical expense benefits constituted a form of PIP benefits subject to the anti-stacking provision of *N.J.S.A.* 39:6A–4.2. *Id.* at 238, 649 *A.*2d 1269.

The Court rejected Aetna's argument, holding that extended medical expense, or med-pay benefits, are not subject to *N.J.S.A.*

39:6A–4.2, the anti-stacking provision. The Court explained the system of Med–Pay as follows:

> Although the matter is by no means without doubt, as we understand the statutory scheme, the Commissioner's implementation thereof, and the insurance industry's accommodation thereto, the extended-medical-expense benefits provision represents a very narrow window of coverage to a limited class of persons who, like plaintiff in this case, are ineligible for basic [now standard] PIP benefits. Recognizing the unavailability of PIP's unlimited (now $250,000) medical coverage but wishing nevertheless to address in some small measure the medical-expense disaster that can befall those injured by use of a highway vehicle (as distinguished from an automobile), the Commissioner, acting under legislative authorization, has mandated first-party coverage of up to $10,000 in medical expenses. The Aetna policy, which follows the standard form, recognizes the difference between that coverage and basic [now standard] PIP by declaring the extended coverage inapplicable if the insured person is entitled to basic [now standard] PIP benefits.

> [*Id.* at 240, 649 *A.2d* 1269.]

The Court reasoned that the industry's recognition of a significant functional difference between basic [now standard] PIP coverage and Section II [Med–Pay] coverage—a difference that [was] underscored by the disallowance of Section II benefits when the insured person [was] entitled to basic PIP coverage, supported its conclusion that the anti-stacking rule did not apply. *Id.* at 241, 649 *A.2d* 1269. Thus, the Court permitted recovery of Med–Pay benefits under both policies. *Id.* at 241, 649 *A.2d* 1269.

■ We are satisfied that the compensation judge correctly interpreted the collateral source statute, *N.J.S.A.* 39:6A–6, to conclude that Med–Pay is not included within its ambit. First, it is clear that Med–Pay is not mentioned in the statute. The language of the statute with respect to the specific benefits not subject to collateral source treatment is clear. The first step in determining the Legislature's intent is to look at the plain language of the statute. *Hubbard v. Reed,* 168 *N.J.* 387, 392, 774 *A.2d* 495 (2001) (citations omitted). [W]hen the language of a statute is clear on its face, 'the sole function of the courts is to enforce it according to its terms.' *Ibid.* (quoting *Sheeran v. Nationwide Mut. Ins. Co.,* 80 *N.J.* 548, 556, 404 *A.2d* 625 (1979))(internal citations omitted).

Second, *N.J.S.A.* 39:6A–6 is a statutory provision that changed the common-law collateral source rule.

> The collateral source rule, with deep roots in English common law, is firmly embedded in American common law as well. It was first cited in an American judicial decision in 1854 and has had continued currency in the centuries to follow. Michael F. Flynn, *Private Aliedical Medical Insurance and the Collateral Source Rule: A Good Bet?*, 22 *U. Tol. L.Rev.* 39, 40 (1990)(citing *The Propeller Monticello v. Mollison*, 58 *U.S.* (17 How.) 152, 15 *L.Ed.* 68 (1854)). The common law collateral source rule "allows an injured party to recover the value of medical treatment from a culpable party, irrespective of payment of actual medical expenses by the injured party's insurance carrier. The purpose of the collateral source rule is to preserve an injured party's right to seek tort recovery from a tortfeasor without jeopardizing his or her right to receive insurance payments for medical care." *Ibid.* The rule "prohibits the tortfeasor from reducing payment of a tort judgment by the amount of money received by an injured party from other sources" and "bars the submission of evidence that the injured plaintiff received payment for any part of his damages, including medical expenses, from other sources." *Id.* at 42. It is thus a rule of damages as well as a rule of evidence. *Ibid.*
>
> According to the Restatement (Second) of Torts § 920A(2) (1977), under the collateral source rule, payments made to an injured party by a source other than the tortfeasor are "not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." The policy advanced by the rule is that "a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor." *Id.* § 920A comment b. Thus, if an injured party has the foresight to provide that his or her medical expenses will be paid by maintaining an insurance policy, the common law collateral source rule allows him or her to benefit from that foresight by recovering not only the insurance proceeds but also the full tort judgment. *Ibid.*
>
> [*Perreira v. Rediger*, 169 *N.J.* 399, 406–07, 778 *A.2d* 429 (2001).]

■ *N.J.S.A.* 39:6A–6 is in derogation of the common law with respect to PIP benefits and other benefits specifically set forth in the statute. [C]ourts follow[ ] the maxim that statutes in derogation of the common law must be strictly construed. *State v. International Fed'n of Prof'l and Technical Engrs.*, 169 *N.J.* 505, 531, 780 *A.2d* 525 (2001).

> Statutes which impose duties or burdens or establish rights or provide benefits which were not recognized by the common law have frequently been held subject to strict, or restrictive, interpretation. Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in the common law.
>
> [Norman J. Singer, *Statutes & Statutory Construction*, § 61:1 (6th ed.2001).]

A statute may take away a common-law right, but there is a presumption that the Legislature has no such purpose. *Blackman v. Iles,* 4 *N.J.* 82, 89, 71 *A.*2d 633 (1950). If a change in the common law is to be effectuated, the legislative intent to do so must be clearly and plainly expressed. *Ibid.* (citation omitted).

Here, it is clear the statute does not expressly cover Med Pay benefits. We note that the Legislature recently revisited the statute and made amendments in 2003. However, the Legislature made no provisions for Med–Pay under the amended version of the collateral source rule. The Legislature was put on notice of the Court's interprctation that Med–Pay benefits did not fall within the purview of the collateral source statute by its 1994 decision in *Ingersoll. See Ingersoll, supra,* 138 *N.J.* at 239, 649 *A.*2d 1269 (establishing that Med–Pay portion of an automobile policy does not fall within the purview of N.J.S.A. 39:6A–4 or N.J.S.A. 39:6A–10). If the Legislature was dissatisfied with the current framework, it could have chosen to extend coverage of the collateral source rule to include Med–Pay benefits when it amended the statute in 2003. We infer from this non-action by the Legislature that it accepted the court's current interpretation of the statute. *See Advance Electric Company v. Montgomery Township Board of Education,* 351 N.J.Super. 160, 175, 797 A.2d 216 (App.Div.2002) (holding that "legislative approval of an administrative interpretation of a statute can be inferred when the Legislature, in amending a statute after a prior administrative interpretation thereof, leaves intact the language which the agency so construed") (citations omitted). Adhering to our proper role, we are obligated to strictly construe the statute as written, which does not apply to Med–Pay benefits. Thus, we cannot grant to Prudential what the Legislature has not provided.

Moreover, Med–Pay benefits, represent a very narrow window of coverage to a limited class of persons who . . . are ineligible for PIP benefits. *Ingersoll, supra,* 138 *N.J.* at 240, 649 *A.*2d 1269. Given the narrow reach of these benefits, we cannot conclude that

the Legislature intended them to be treated like PIP benefits pursuant to *N.J.S.A.* 39:6A–6, but neglected to say so.

Prudential wants this court to treat Med–Pay benefits like PIP benefits. It argues that the policy of both benefits is the same and therefore to be fair they should be treated alike. That may be so, but that is an argument to be addressed by our Legislature in light of the plain language of the statute that does not mention Med–Pay benefits.

Furthermore, this record does not support a conclusion that petitioner is receiving a double recovery. What is clear, however, is that petitioner collected benefits pursuant to an insurance policy with Prudential for which she paid a premium. The essential nature of insurance is that risk is shifted to the insurer for the payment of a premium. It is a gamble. *Perreira, supra,* 169 *N.J.* at 417, 778 *A.*2d 429.

> That bargain, struck between an insurer and its insured guarantees payments, in exchange for a premium, regardless of whether an injury was caused by the insured or a third party. *Ibid.; see also* Roger Baron, *Subrogation: A Pandora's Box Awaiting Closure,* 41 *S.D. L.Rev.* 237, 241–43(1996)(stating that insured is not getting double recovery but is simply recovering on contract for which premiums have been paid, and insurer should not benefit from plaintiffs foresight to purchase insurance); *Youngblood v. American States Ins. Co.,* 262 *Mont.* 391, 866 P.2d 203, 208 (1993)(holding that subrogation provision invalid due to public policy considerations including fact that insured had paid premium for medical payment coverage).

> [*Id.* at 417–18, 778 *A.*2d 429.]

Applying the above language here, we affirm the order of the Judge of Compensation. The relief Prudential seeks must be obtained from the Legislature.

Affirmed.